2016 PA Super 27

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVID SCOTT IRVIN, | |
| Appellant | No. 726 MDA 2015 |

Appeal from the Judgment of Sentence March 31, 2015
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0001258-2013

BEFORE:  PANELLA, J., MUNDY, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.:                    **FILED FEBRUARY 08, 2016**

David Scott Irvin ("Appellant") appeals from the judgment of sentence entered after a jury convicted him of possession with intent to deliver ("PWID"),[1] possession of drug paraphernalia,[2] criminal conspiracy to unlawful delivery of a controlled substance, [3] and tampering with evidence.[4] Sentenced to an aggregate of 25 months' to 12 years' imprisonment,[5]

_____

[1] 35 P.S. § 780-113(a)(30).
[2] 35 P.S. § 780-113(a)(32).
[3] 18 Pa.C.S. § 306.
[4] 18 Pa.C.S. § 4910(1)
[5]By its Order of March 31, 2015, the trial court ran the Tampering with Evidence sentence of four months' to two years' incarceration consecutively to the concurrently-run sentences of twenty-one months' to ten years'
*(Footnote Continued Next Page)*


*Former Justice specially assigned to the Superior Court.

Appellant challenges the denial of his motion to suppress and the sufficiency of the evidence offered at trial. We affirm.

Appellant's arrest and convictions stem from evidence obtained during both a warrantless search of trashcans placed behind the residence of Appellant's co-defendant ("Co-Defendant") and the subsequent execution of search warrants relating to the residence. According to the affidavit of probable cause prepared in support of the first residential search warrant, Detective Rodney Temple of the Mechanicsburg Police Department/Cumberland County Criminal Investigation Division, Drug Task Force received multiple visitors to the police station complaining of apparent drug activity at the residence. Appl. for Search Warrant/Aff. of Probable Cause at 2, March 14, 2013. These neighbors specifically complained of the tenant, a white male in his 40s, and a tall, thin black male who they said frequently stayed at the residence for long periods. *Id.* at 3. The detective's own research confirmed he had recently encountered the tenant, Co-Defendant, as part of an emergency dispatch to the residence on reports of a man brandishing a rifle while standing on the back porch. *Id.* at 2. A criminal history check of Co-Defendant revealed three prior drug paraphernalia convictions.

---

*(Footnote Continued)*

incarceration for PWID and Conspiracy, respectively. The sentence for Possession of Drug Paraphernalia consisted of payment of the costs of prosecution.

Prompted by this information, Detective Temple went to the residence on the morning of a regularly scheduled trash pick-up day and conducted a trash pull from trashcans placed alongside an alleyway directly behind Co-Defendant's back yard. *Id.* at 3. Found among the trash were two partial marijuana cigarettes rolled with cigar papers, a tied sandwich bag consistent with packaging for marijuana distribution, and three discarded receipts from the U.S. Post Office, Sprint, and Patient First in Mechanicsburg, respectively, each bearing Appellant's name. *Id.* at 2.

Detective Temple applied for a warrant to search Co-Defendant's residence on probable cause of possession of drug paraphernalia. On the application's line for "owner, occupant, or possessor of said premises," the detective correctly entered Co-Defendant's name but misidentified Appellant as "Benjamin Irvin." *Id.* at 1. Next to this name, however, the application correctly listed Appellant's date of birth, and the attached affidavit correctly referred to Appellant as "David Irvin" and indicated that a computer search of his Pennsylvania drivers' license revealed a photograph of what appeared to be a tall, thin black male consistent with the description given by one of the neighbor complainants. *Id.* at 3. On March 14, 2013, a magistrate issued a search warrant.

On March 15, 2013, police executed the search warrant and detained Appellant after he ran into a bathroom in a failed attempt to flush two bags of heroin down the toilet. Trial Tr. at 26, 78, December 4-5, 2013. A search of Appellant's person uncovered $2,570 in cash, $2,500 of which was bound

with the same type of small, black rubber bands that were used to tie the bags of heroin. *Id.* at 91. In addition to discovering the heroin, Detective Temple detected the smell of burnt marijuana, viewed drug paraphernalia during a protective sweep of the residence, and noticed that Appellant's cell phone was continuously ringing. Detective Temple, therefore, applied for a second search warrant on probable cause of PWID, which the issuing authority granted that same day.

Execution of the second search warrant included the discovery of a safe located in the closet of an upstairs bedroom. Appellant and Co-Defendant heard the noise as police worked to open the safe, prompting Appellant to advise a detective he could give them the combination although there was nothing inside the safe. *Id.* at 102. The safe, in fact, contained six bundles—consisting of 60 bags—of heroin. *Id.* at 96.

The bedroom in which the safe was located lacked a bed,[6] but it contained articles belonging to Appellant, including his medical cards, driver's license, and identification cards. *Id.* at 93. A good deal of clothing was in the room, and the closet was "filled with dry cleaning" bearing a dry cleaning tag with Appellant's name and phone number written on it. *Id.* at 93-94. The safe containing heroin sat directly underneath Appellant's stack of clothes from the dry cleaners. *Id.*

---

[6] A different bedroom contained the only bed in the house, and Appellant's shoes were located on the floor alongside the head of this bed. *Id.* at 97.

During the second search, a detective noticed Appellant sitting on a cell phone and its memory card that were both broken in half. *Id.* at 102. The detective who initially **Terry**[7] frisked Appellant had felt what he believed to be an intact cell phone in Appellant's pocket, but he left it in place pursuant to orders to remove only suspected weapons. *Id.* at 87-88. A lieutenant at the search testified he had heard a crackling noise emanating from the room holding Appellant and Co-Defendant and attributed it to the destruction of the phone and card. *Id.* at 179, 181-82. Appellant also possessed a white cell phone in his front pocket that another officer had removed and place on a window sill. *Id.* at 90-91.

Charged with various counts of drug-related offenses and tampering with evidence, Appellant filed an omnibus pre-trial motion to suppress evidence obtained from the warrantless search of trash and the execution of warrants to search the residence for paraphernalia and evidence relating to PWID. The court denied the motion after a joint hearing on Appellant's and Co-Defendant's respective motions[8] and scheduled the case for jury trial. On December 5, 2013, a jury convicted Appellant as noted *supra*, and the court imposed an aggregate sentence of 28 months' to 12 years' imprisonment. A successful collateral challenge to Appellant's sentence, however, required the PCRA court to vacate and remand for resentencing.

---

[7] **Terry v. Ohio**, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[8] Different counsel represented Appellant and Co-Defendant, respectively.

On March 31, 2015, the court resentenced Appellant to 25 months' to 12 years' imprisonment. This timely direct appeal followed.

Appellant raises the following issues for our review:

**I. WHETHER THE PRETRIAL COURT ERRED IN DENYING APPELLANTS' OMNIBUS PRETRIAL MOTION TO SUPPRESS.**

**II. WHETHER THE EVIDENCE PRESENTED AT TRIAL WAS SUFFICIENT TO CONVICT APPELLANT OF POSSESSION WITH INTENT TO DELIVER A CONTROLLED SUBSTANCE.**

**III. WHETHER THE EVIDENCE PRESENTED AT TRIAL WAS SUFFICIENT TO CONVICT APPELLANT OF CRIMINAL CONSPIRACY.**

Appellant's Br. at 5.

In reviewing a ruling on a suppression motion, our standard of review is whether the factual findings and the legal conclusions drawn therefrom are supported by the evidence. *Commonwealth v. Lagenella*, 83 A.3d 94, 98 (Pa. 2013). We are bound by the factual findings of the suppression court supported by the record, but we are not bound by the suppression court's legal rulings, which we review *de novo. Commonwealth v. James*, 69 A.3d 180, 186 (Pa. 2013). Further, the reviewing court may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the entire record. *Lagenalla*, *supra* (citing *Commonwealth v. Russo*, 934 A.2d 1199, 1203 (Pa. 2007)).

Appellant's appeal from the suppression order centers on three points. First, he contends the inclusion of erroneous information in the search warrant and affidavit of probable cause—specifically, entries misidentifying him as "Benjamin" instead of "David" Irvin on the face sheet and listing the wrong day of the week on which Detective Temple conducted the trash pull—invalidated the warrants issued in his case. Second, he claims the warrantless search of trashcans outside of Co-Defendant's residence violated his privacy rights under the Fourth Amendment.[9] Third, he asserts the second search warrant failed to authorize a search of the safe. We address these points out of turn, reviewing the second point first, as the trash pull occurred first chronologically and provided critical evidence upon which the issuing authority relied in making its probable cause determination.

In his brief, Appellant argues "neither the averments contained in the affidavit of probable cause nor the testimony presented at the omnibus pretrial motion hearing supported a finding by the [suppression] court that the trash was not within the curtilage of [Co-Defendant's] residence." Appellant's brief at 13.[10] It is well established that "[a]bsent probable cause

_____

[9] We assume, without deciding, that Appellant possessed standing to raise a Fourth Amendment challenge to the search of trashcans belonging to the residence.

[10] The Pennsylvania Supreme Court has clarified

a magistrate need not "anticipate constitutional challenges to the acquiring of the information in the affidavit," as any legal distinction between garbage from the porch versus the sidewalk

*(Footnote Continued Next Page)*

and exigent circumstances, warrantless searches and seizures in a private home violate both the Fourth Amendment and Article 1, [Section] 8 of the Pennsylvania Constitution." ***Commonwealth v. Gibbs***, 981 A.2d 274, 279 (Pa.Super. 2009). Our courts have extended this constitutional protection to the curtilage of a person's home. "Curtilage has been defined in constitutional context as in 'the common law, by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private.'" ***Commonwealth v. Gibbs***, 981 A.2d 274, 279 (Pa. Super. 2009).

In ***Gibbs***, this Court found neither legal precedent nor evidence in the record before it supporting the proposition that occupants of a home had a

*(Footnote Continued)* ————————————————

> can be dealt with in a suppression motion, but the magistrate does not err by failing to note an issue or quiz the affiant on the matter. The magistrate is to evaluate probable cause, not anticipate or rule pre-search on any conceivable suppression issue counsel may later assert. Likewise, we find no authority requiring an affiant to anticipate and defend against arguments that the information in the affidavit was unconstitutionally acquired.

***James***, 69 A.3d at 190. Accordingly, it was not necessary for Detective Temple's affidavit of probable cause to establish that the trashcans lay beyond the curtilage of Co-Defendant's residence, for the issuance of a warrant depends not upon a showing that information was constitutionally acquired but only upon evidence establishing probable cause to support its issuance. This is not to say, however, that a suppression court addressing a Fourth Amendment challenge to a warrantless trash search may consider only extrinsic evidence offered to explain the circumstances surrounding the search without considering, in addition, averments contained in the search warrant application. We, therefore, discern nothing problematic with Appellant's reference to both the search warrant application and extrinsic evidence in framing his present challenge.

Fourth Amendment-based expectation of privacy in an empty, unenclosed front porch abutting the sidewalk and otherwise devoid of any attribute indicating an intent to deny access to the general public. *Id.* at 280. Similarly, we identified no reasonable expectation of privacy in trash placed in a trashcan located under the porch of a parsonage because the area was publicly accessible and, hence, open to public inspection. ***Commonwealth v. Perdue***, 564 A.2d 489, 494 (Pa. Super. 1990); ***accord Commonwealth v. Lawley***, 741 A.2d 205, 211 (Pa. Super. 1999).

During the joint hearing on Co-Defendant's and Appellant's respective motions to suppress, the suppression court identified the trash pull issue as turning on "whether it was discarded trash. The Court will have to determine where the trash was." Suppression Hr'g Tr. at 19, November 8, 2013. Detective Temple, therefore, indicated on a drawing of the property that he found the trashcans sitting where the rear of the property ends and the alleyway begins, consistent with how neighboring residents also placed their trashcans on garbage pickup day. *Id.* at 23. The court deemed credible Detective Temple's testimony as to the location of the trashcans, and, given the obvious public access to the location, it relied on above-cited precedent to reject Appellant's Fourth Amendment claim and uphold the detective's warrantless search. We discern no error with the suppression court's conclusion in this regard.

In Appellant's next charge of suppression court error, he asserts the warrant application contained defects pertaining to his first name and the day of the trash pull that invalidated the first two search warrants and rendered all subsequent searches and seizures in this case unconstitutional. So ambiguous were the warrants because of these two errors, Appellant argues, that the issuing authority could not have discerned probable cause to believe authorities would find contraband at Co-Defendant's residence. We disagree.

This Court has addressed the particularity requirements of a search warrant application.

> The Rules of Criminal Procedure include a particularity requirement: "Each search warrant shall be signed by the issuing authority and shall: ... (c) name or describe with particularity the person or place to be searched." Pa.R.Crim.P. [205]. The Comment to Rule 2005 explains: "Paragraphs (b) and (c) are intended to proscribe general or exploratory searches by requiring that searches be directed only towards the specific items, persons, or places set forth in the warrant. Such warrants should, however, be read in a common sense fashion and should not be invalidated by hypertechnical interpretations." Similarly, the Supreme Court has held a "practical, common-sense" approach should be taken in determining whether the place to be searched is specified with sufficient particularity. *Commonwealth v. Carlisle*, 517 Pa. 36, 534 A.2d 469, 472 (1987).

> The Pennsylvania Supreme Court has concluded Article 1, Section 8 of the Pennsylvania Constitution affords greater protection than the Fourth Amendment, *Edmunds*, *supra*, including a more demanding particularity requirement; the description must be as particular as reasonably possible. *Commonwealth v. Grossman*, 521 Pa. 290, 555 A.2d 896, 899 (1989). "The twin aims of Article 1, Section 8 are the safeguarding of privacy and the fundamental requirement that

warrants shall only be issued upon probable cause." ***Commonwealth v. Waltson***, 555 Pa. 223, 724 A.2d 289, 292 (1998).

> In order to protect these twin aims, a warrant must describe the place to be searched and the items to be seized with specificity, and the warrant must be supported by probable cause. The place to be searched must be described "precise enough to enable the executing officer to ascertain and identify, with reasonable effort, the place intended, and where probable cause exists to support the search of the area so designated, a warrant will not fail for lack of particularity."
>
> ***Id.***, at 292 (quoting ***In re Search Warrant B-21778***, 341 Pa.Super. 350, 491 A.2d 851, 856 (1985), ***aff'd***, 513 Pa. 429, 521 A.2d 422 (1987)).

***Commonwealth v. Belenky***, 777 A.2d 483, 485-86 (Pa. Super. 2001) (footnote omitted).

Initially, we note Appellant's brief fails to explain with detailed discussion and citation to authority how the application's allegedly defective account of which day of the week Detective Temple conducted the trash pull impaired the magistrate's ability to ascertain either the place to be searched or whether probable cause supported the search. He, therefore, may obtain no relief on this claim. ***Commonwealth v. Johnson***, 985 A.2d 915, 924 (Pa. 2009) (deeming waived issue unsupported by pertinent discussion and citation to authority). ***See also*** Pa.R.A.P. 2119(a) (an appellate brief shall consist of an argument section providing discussion of the particular point raised followed by a discussion and citation of pertinent authorities).

Even if Appellant had developed this point, we would deem the question of whether the trash pull occurred on the Wednesday or Thursday of the week irrelevant to the magistrate's task of determining whether the four corners of the application described a sufficient nexus between the trashcans and Co-Defendant's residence to establish probable cause to issue the first search warrant. In this regard, the application sufficiently connected the trashcans to Co-Defendant's residence when it indicated they sat "next to the alley way directly behind the [Co-Defendant's] home in front of a shed that was on the property. This was consistant [sic] with other residents in the area who had their trash out on the regularly scheduled trash day." Appl. for Search Warrant/Aff. of Probable Cause at 3, March 14, 2013. The warrant application, therefore, specified a proper basis upon which to form probable cause to suspect possession of drug paraphernalia inside Co-Defendant's residence, and the issuing authority tailored the warrant to the application.

Nor does the provision of an incorrect first name in this case provide a basis upon which to reverse the suppression court's order denying relief. Here, Detective Temple initially presented the issuing authority with a search warrant application and accompanying affidavit setting forth, with specificity, evidence supplying probable cause to believe Co-Defendant and Appellant possessed drug paraphernalia in the residence they occupied. Although the face sheet of the application misidentified Appellant as "Benjamin" in a single instance, his correct date of birth appeared immediately afterward on the

same line. Consistent with the correct date of birth, moreover, the affidavit accurately listed Appellant's name, referred to three receipts recovered from the residential trash bearing his name, and indicated that Detective Temple used Appellant's driver's license photograph and description to connect Appellant with eyewitness accounts describing the physical features of Co-Defendant's frequent guest at the residence.[11]

_____

[11] Even if we were to assume *arguendo* that the warrant application inadequately identified Appellant as an occupant or possessor of the residence to be searched, such a deficiency would not have required suppression of evidence in the case against him. Independent of the erroneous first name given to Appellant on the warrant application's face sheet, the application otherwise specified neighbors' eyewitness accounts that the residence received frequent visits of short duration throughout the night, explained a search of abandoned trash outside the residence yielded materials used as drug paraphernalia, and included Co-Defendant's history of three arrests and a guilty plea to possession of drug paraphernalia. The application, therefore, supplied probable cause to support the issuance of a warrant to search Co-Defendant's residence for drug paraphernalia.

It was during lawful execution of the search warrant that officers observed Appellant flee to a bathroom in an attempt to destroy heroin in his possession. Officers immediately arrested Appellant, therefore, not for his status as an occupant of the residence but for the criminal act he had committed in their presence, and they discovered the large amount of cash and his constantly ringing cell phone on his person during a lawful search incident to his arrest. Consequently, the second application for a search warrant related these lawful observations of Appellant's criminal conduct and, in large part, relied upon them to request a second warrant to search the entire residence for heroin and funds derived from its sale. The issuance of a warrant to search the entire residence for heroin and funds deriving from its sale was, thus, proper, and Appellant advances no credible position that the search of a safe located among his possessions was outside the reasonable scope of the warrant.

Viewing the totality of information contained in both search warrant applications and their corresponding warrants, therefore, we have no concern that the errors complained of hampered the issuing authority's assessment of probable cause with respect to either the proper venue or persons named. **See Belenky**, **supra** at 486 (holding search warrant errors necessitating relief are those hampering issuing authority's assessment of probable cause in person or place to be searched); **Commonwealth v. Carlisle**, 534 A.2d 469, 472 (Pa. 1987) (holding affidavit's listing of correct information as to apartment number to be searched cured error of omitting apartment number on face sheet of warrant application).

Addressing Appellant's final suppression claim, we discern in neither Appellant's omnibus pretrial motion nor his presentation at the suppression hearing a claim that the search of the safe exceeded the scope of the second search warrant.[12] Instead, he sought to suppress the contents of the safe

_____

[12] At the hearing, only counsel for Co-Defendant addressed the search of the safe, and his truncated argument on the issue consisted of nothing more than the following:

> "With regard to the safe issue, I believe the only evidence that we heard was that they had the second search warrant in hand. That would be a valid search if the safe — contents in the safe are considered to be within the four corners by Your Honor."

Suppression Hr'g Tr. at 19. Counsel for Appellant neither concurred nor requested to join in this argument, which was also absent from Appellant's omnibus pretrial motion. We, therefore, conclude Appellant has waived this issue. **Cf. Commonwealth v. Woods**, 418 A.2d 1346, 1352 (Pa. Super. 2008) (holding when a co-defendant preserves an issue by objecting, the defendant waives the issue unless he joins the objection); **Commonwealth v. Cannady**, 590 A.2d 356, 362 (Pa. Super. 1991) (holding an appellant

*(Footnote Continued Next Page)*

only as the derivative of both an unconstitutional warrantless trash search and a fatally defective search warrant application. Having rejected both predicate claims, this derivative claim, too, must fail.

Even if Appellant preserved this issue, it would entitle him to no relief. "Where a search warrant adequately describes the place to be searched and the items to be seized the scope of the search 'extends to the entire area in which the object of the search may be found and properly includes the opening and inspection of containers and other receptacles where the object may be secreted.'" **Commonwealth v. Waltson**, 724 A.2d 289, 292 (Pa. 1998). Here, based on an affidavit describing Appellant's possession of and/or dominion over heroin, cash, and cell phones in Co-Defendant's residence, the second warrant authorized a search of the residence for, *inter alia*, marijuana, heroin, funds derived from their sale, and documents relating to their sale. Within the fair scope of this warrant, therefore, was a search of a safe located among Appellant's belongings in the residence, as it represented a container in which money and contraband may have been secreted.

In Appellant's remaining two issues, he challenges the sufficiency of evidence presented in support of PWID and conspiracy charges. We review Appellant's sufficiency of the evidence claims under the following standard:

_(Footnote Continued)_ ————————————————

may not rely on objection lodged by co-defendant to preserve claim for appeal, even if objection was identical to appellate claim now raised).

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Vargas**, 108 A.3d 858, 867-68 (Pa. Super. 2014) (citations omitted).

Specifically, Appellant assails his convictions on PWID and conspiracy to commit PWID by pointing to evidence that he never enjoyed exclusive access to the bedroom containing the safe or resided at the address in question. Neither did authorities find heroin on his person or observe him selling heroin at the time of his arrest, he claims. In essence, the crux of Appellant's sufficiency claims is that his ties to the residence and, in particular, to the heroin in the safe were too tenuous to prove either conspiracy or the constructive possession element to PWID.

Section 903 of the Pennsylvania Criminal Code provides:

**§ 903. Criminal conspiracy**

**(a) Definition of conspiracy**.—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one of more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903. As to the sufficiency of evidence offered to prove conspiracy, this Court has observed:

[c]ircumstantial evidence may provide proof of the conspiracy. The conduct of the parties and the circumstances surrounding such conduct may create a "web of evidence" linking the accused to the alleged conspiracy beyond a reasonable doubt. Additionally:

An agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

*Commonwealth v. Jones*, 874 A.2d 108, 121–22 (Pa.Super. 2005) (quoting *Commonwealth v. Greene,* 702 A.2d 547, 554 (Pa.Super. 1997)) (internal citations omitted).

*Commonwealth v. Perez*, 931 A.2d 703, 708 (Pa. Super. 2007).

As noted *supra*, the Commonwealth sought to establish Appellant's connection to the heroin stored inside the safe through evidence that he and he alone dealt heroin in Co-Defendant's residence. Toward this end, trial

testimony described how Appellant attempted to discard two bags of heroin while fleeing from police, possessed over $2,500 in cash bound in rubber bands identical to those used to secure the six bundles of heroin in the safe, knew the combination of the safe, and destroyed a cell phone and its memory card before police confiscated them. Moreover, Co-Defendant testified he and Appellant were operating under an arrangement by which he would receive free heroin from Appellant in exchange for allowing Appellant to use his residence as a base for selling heroin to others. Co-Defendant testified, further, that he never saw Appellant use heroin, and he indicated the safe belonged to Appellant, an allegation corroborated by both the location of the safe within a closet storing Appellant's personal belongings and Appellant's claim of knowing the combination. Trial Tr. at 51-55, 93-94, 102. The Commonwealth also presented expert opinion that the large amount of heroin located in the safe was consistent with the intent to deliver. *Id.* at 168, 170.

Viewed in light of our governing standard of review, the sum of this evidence sufficed to prove beyond a reasonable doubt the existence of an agreement between Appellant and Co-Defendant permitting Appellant to deal heroin from the residence. Accordingly, we find no merit to Appellant's sufficiency challenges. [13]

---

[13] Successful proof of a conspiracy makes each co-conspirator fully liable for all of the drugs recovered, without the necessity of proving constructive

*(Footnote Continued Next Page)*

Judgment of sentence is AFFIRMED.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/8/2016

---

*(Footnote Continued)* ———————————

possession.  ***See Id.*** at 709.  Because sufficient evidence supported Appellant's conviction for conspiracy to deliver heroin, we need not address whether sufficient proof that he constructively possessed heroin in the safe supported his conviction for PWID.  Nevertheless, were we required to address Appellant's constructive possession argument on its merits, it would fail for the same reasons defeating his conspiracy argument.