J-S92026-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KENNETH DUAN REESE, JR. | |
| Appellant | No. 736 WDA 2016 |

Appeal from the Judgment of Sentence April 1, 2016
In the Court of Common Pleas of Crawford County
Criminal Division at No(s): CP-20-CR-0000754-2015

BEFORE:  SHOGAN, J., MOULTON, J., and STRASSBURGER, J.[*]

MEMORANDUM BY MOULTON, J.:                    **FILED APRIL 19, 2017**

Kenneth Duan Reese, Jr. appeals from the April 1, 2016 judgment of sentence entered in the Crawford County Court of Common Pleas following his jury trial convictions for two counts of conspiracy to commit burglary,[1] two counts of conspiracy to commit criminal trespass,[2] one count of conspiracy to commit theft by unlawful taking,[3] and one count of receiving stolen property.[4]  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 903(a)(1), §3502(a)(2).

[2] 18 Pa.C.S. §§ 903(a)(1), 3503(a)(1).

[3] 18 Pa.C.S. §§ 903(a)(1), 3921(a).

[4] 18 Pa.C.S. § 3925(a).

The trial court provided the following factual summary of the four-day jury trial:

> Testifying for the Commonwealth were the following: Thomas Miller and Joanie Ondrako, whose residences were the alleged targets of the conspiracies; Philip Shaffer of the Pennsylvania State Police, the investigating officer; Zachary Eli Trout ("Trout") and Craig Alan Hanes, Jr. ("Hanes"), two of [Reese's] alleged co-conspirators; Sage Powell, Trout's girlfriend, who allegedly had contacted the State Police about suspicious activities; and Martha Wheeler, from whom the State Police allegedly retrieved property stolen from Mr. Miller. All except for the trooper were sequestered. The defense called only William A. Phillips, III ("Phillips"), the remaining co-conspirator.
>
> Trout had previously pleaded guilty to criminal conspiracy to commit burglary, and to theft by receiving stolen property, graded as felonies of the first and third degree, respectively; he received the maximum county incarceration sentence on December 5, 2015.[3] Hanes had pleaded guilty to burglary and to attempt to commit burglary, both first degree felonies, and received the same incarceration sentence on December 2, 2015.[4] Phillips had pleaded guilty to burglary (two counts, as first degree felonies), theft by unlawful taking or disposition (two counts, as a second degree felony and first degree misdemeanor), and theft by receiving stolen property (one count, a first degree misdemeanor); he received concurrent state sentences on October 8, 2015.[5] All three had also been charged with offenses occurring at other residences during the same time period (April 2015). The jury was informed that they were currently serving those sentences.
>
> [3] Case No. CR 578-2015 (Counts 1 and 3; Count 2, for burglary, was nolle prossed).
>
> [4] Case No. CR 579-2015 (Counts 3 and 7; thirteen other counts were nolle prossed).
>
> [5] Case No. CR 51-2015 (Counts 2, 3, 9, 11, 13; eighteen other counts were nolle prossed).

- 2 -

Hanes testified that he had known Trout from high school, for almost six years, and had known Phillips, who had lived across from Hanes' mother, for three or four years. On a day when he and Phillips had been staying at Trout's, they left to burglarize houses. Another evening, in April 2015, he, Phillips, and [Reese], who was then also staying at Trout's (as was Trout's girlfriend), left on foot to burglarize more homes, having arranged to have Trout pick them up afterwards. [Reese] entered a brown house on Rhueville Road through an unlocked rear window, and unlocked the front door for the others to follow. They removed guns, a black duffle bag, air compressor, and other items, and stashed them under a picnic table at a house across the street. At a nearby house on Farley Lane, they pushed in an air conditioning unit for [Reese] to enter; he emerged from the back door a few minutes later with only a rifle. They then returned to Trout's, who took them to where they had left the stolen items, which Hanes, Phillips, and [Reese] loaded onto the bed of Trout's pickup truck. They unloaded these items at Trout's, and later, at Trout's direction, took some items to sell to David Simons and Ms. Wheeler. When subsequently questioned by Trooper Shaffer, Hanes reported [Reese's] involvement in the second criminal episode. He never told him that [Reese] committed all of the burglaries.

Trout testified that Hanes, Phillips, and [Reese] frequently stayed with him and Ms. Powell in April 2015. When they left one evening, they said they would call to have him pick them up. Trout was the only one with a vehicle, and did not specifically know what they planned to do. When he picked them all up about two hours later, they placed various items in the bed of his Ford Ranger. Back at Trout's, these items were moved to a shed. The next day, [Reese] took some tools and firearms from the shed, and he left with someone in a van. Returning, he asked for a ride to the Andover flea market, and when Trout and Ms. Powell met up with him later there, he did not have the power converter and tools that he had taken along with him. These were items that Trout had seen him with when picking up the three the previous evening. Trout also took [Reese] to the Simon-Wheeler residence to trade some items for marijuana, including a black duffel bag containing ammunition which had been in the shed.

Ms. Powell stated that [Reese] was among those who had stayed at Trout's in April of 2015. While walking the dogs, she had seen him and Hanes and Phillips taking guns and other things in and out of the shed, and later reported her suspicions to the police. [Reese], sometime in April, had asked to be driven to the Andover flea market, where he had apparently disposed of some firearms and [a] mobile hotspot that she had not seen previously.

Mr. Miller described his discovery of his summer home on Rhueville Road in disarray, with the front door and a rear window open. Thirty-two items, including knives, guns, ammunition, wifi hotspot, laptop computer, and a large black tote had been taken. Ms. Ondrako reported that she also had been notified by a neighbor of the break-in at her camp on Farley Lane, and had found the air conditioner pushed in and cupboard doors open and other signs of entry. A rifle, saw, and hunting suit were missing.

Ms. Wheeler testified that Hanes was a "shirttail" relative, and that she had paid Phillips, Hanes, and Trout to clean some stalls. Toward the end of April, they came to her house in a black pickup truck to sell things to Mr. Simons, in exchange for drugs. This happened more than once, with different persons coming, including [Reese]. They said that these things had been bought at flea markets, or came from cleaning out Trout's grandfather's garage.[6] The State Police had later contacted her and retrieved some tools, a gun, a bucket of bullets, and other stolen items.

[6] Trout mentioned that his grandfather had worked for Mr. Simons. Ms. Wheeler was apparently familiar with [Reese], as she added, on cross-examination, that "Kenny" [Reese] . . . had also tried to sell her some jewelry, which she knew to have been stolen due to his recent release from prison.

Trooper Shaffer testified that, while working in the crime investigation unit, he had received an anonymous call about items sold to Ms. Wheeler and Mr. Simons. He met with Ms. Wheeler, who identified Hanes, Trout, Phillips, and [Reese] as the sellers. Among the items recovered there were tools, a rifle, ammunition, and a large black duffle bag bearing Mr. Miller's name. The

- 4 -

trooper then obtained a search warrant for the Trout residence, where he discovered numerous tools, knives, shotgun shells, and a rifle all belonging to Mr. Miller. Later, Hanes agreed to accompany him to the Rhueville Road area, where he identified the Miller and Ondrako residences as the two houses that he, Phillips and [Reese] had visited.

Phillips testified for the defense that he was [] eighteen and had a "pretty clear recollection" of events. He had stayed at Trout's three or four times, along with Hanes and Ms. Powell. They had gone out to burglarize four houses in the Rhueville Road, all at the same time. He and Hanes entered by bending and breaking a back door, by breaking a window in a garage, and by pushing in an air conditioner. Trout drove them back to his place with the rifle, air compressor, and other items they had collected, some of which were sold to David Simons on two different occasions. [Reese] was never present. Phillips had met him when [Reese] had stayed overnight once or twice at Trout's. Trout, fearing that they had been discovered, had asked him to change his testimony to implicate [Reese], and he had agreed to do so.

Asked on cross-examination whether he remembered the brown house, he wasn't sure, as he had been high and very intoxicated. He did not recall making a statement that all four had been involved. He was aware that both Hanes' and Trout's statements implicated [Reese] in the conspiracies, and that no one had followed through on the scheme to blame everything on [Reese].

Memorandum and Order, 4/21/16, at 2-6 ("Post-Sentence Op.").[5]

On January 22, 2016, the jury found Reese guilty of the aforementioned counts.[6] On April 1, 2016, the trial court imposed an

_____

[5] On June 15, 2016, the trial court issued an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) incorporating its post-sentence opinion as addressing the issues on appeal.

aggregate sentence of 54 to 120 months' incarceration.[7]  On April 11, 2016, Reese filed a post-sentence motion arguing the evidence was insufficient to support the verdict and the verdict was against the weight of the evidence. On April 21, 2016, the trial court denied the motion.  On May 19, 2016, Reese filed a timely notice of appeal.[8]

Reese raises the following issue on appeal:

> I. Whether the verdict of guilty as to five counts of criminal conspiracy and one count of theft by receiving stolen

*(Footnote Continued)* ———————————

[6] The jury found Reese not guilty of one count of conspiracy to commit theft by unlawful taking.  The trial court declared a mistrial as to seven other counts:  six counts that charged Reese with the offenses underlying the conspiracy convictions — burglary, theft by unlawful taking, and criminal trespass — and one count that charged Reese with theft by receiving stolen property.  A *nolle pros* was later entered for the seven counts.

[7] The trial court sentenced Reese to 27 to 60 months' incarceration for conspiracy to commit burglary of the Rhueville Road residence, a concurrent term of 21 to 42 months' incarceration for conspiracy to commit burglary of the Farley Lane residence, and a consecutive term of 27 to 60 months' imprisonment for the conviction for theft by receiving stolen property.  The remaining convictions merged for sentencing purposes.

[8] Reese also filed a *pro se* notice of appeal on April 28, 2016.  On July 25, 2016, this Court dismissed the *pro se* appeal, docketed at 797 WDA 2016, as duplicative of the instant appeal.

Further, on July 13, 2016, counsel filed an application to withdraw as counsel, stating Reese requested that counsel cease representation and refrain from taking further action.  On July 21, 2016, this Court remanded the case to the trial court for a colloquy of Reese pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).  On August 11, 2016, following a **Grazier** hearing, the trial court issued an order finding Reese chose to retain his counsel and denying counsel's motion to withdraw.

property was insufficiently supported by the evidence and against the weight of the evidence?

Reese's Br. at 4.

Reese first claims the evidence was insufficient to support the verdict. We apply the following standard when reviewing a sufficiency of the evidence claim:

> [W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Best*, 120 A.3d 329, 341 (Pa.Super. 2015) (quoting *Commonwealth v. Harden*, 103 A.3d 107, 111 (Pa.Super. 2014)) (some alterations in original).

The jury found Reese guilty of two counts of conspiracy to commit burglary, one count for the burglary on Rhueville Road and one for the burglary on Farley Lane; one count of theft by receiving stolen property, for

property removed from Rhueville Road residence; two counts of conspiracy to commit criminal trespass, one count for trespass at Rhueville Road and one count for trespass at Farley Lane; and one count of conspiracy to commit theft by unlawful taking, for property removed from Rhueville Road residence.

Reese maintains the Commonwealth failed to establish that he entered into a conspiracy or that he had possession or actual control of the property allegedly taken from the victims' residences. Reese's Br. at 9. He argues that only Hanes testified that any conspiracy existed and that he testified that the conspiracy was between Hanes, Trout, and Phillips. *Id.* at 13. Reese maintains that Phillips testified Reese had no involvement and that Wheeler's testimony confirmed the lack of involvement.[9] *Id.* He further contends that the police failed to establish they found any of the stolen property in his possession. *Id.*

_____

[9] Reese maintains that Wheeler testified that on the weekend when the sale of the items stolen from the two residences occurred, Reese was not at her house. Reese's Br. at 7. Wheeler testified that "[t]owards the end of April," Reese and the alleged co-conspirators came to her house to sell items to Simons. N.T., 1/20/16, at 37. She stated they were there several times. *Id.* On cross-examination she stated that the four were never at her house at the same time; rather, "[i]t was usually two boys or three boys." *Id.* at 39. The cross-examination further attempted to establish that on the weekend of the burglaries, only Trout, Hanes, and Phillips went to sell items to Simons. *Id.* at 39-43. However, as the trial court noted, "[t]he possible sale of some stolen property to Mr. Simons when [Reese] was absent does not contradict Ms. Wheeler's testimony that [Reese] appeared at her residence at other times to sell items." Post-Sentence Op. at 8.

Criminal conspiracy is defined as follows:

> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
>
> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903. This Court has stated that:

> [c]ircumstantial evidence may provide proof of the conspiracy. The conduct of the parties and the circumstances surrounding such conduct may create a "web of evidence" linking the accused to the alleged conspiracy beyond a reasonable doubt.

*Commonwealth v. Irvin*, 134 A.3d 67, 75 (Pa.Super. 2016) (quoting

*Commonwealth v. Perez*, 931 A.2d 703, 708 (Pa.Super. 2007)). Further,

> [a]n agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

*Id.* (quoting *Perez*, 931 A.2d at 708).[10]

_____

[10] Burglary is defined as:

> **(a) Offense defined.--**A person commits the offense of burglary if, with the intent to commit a crime therein, the person:

*(Footnote Continued Next Page)*

- 9 -

Theft by receiving stolen property is defined as: "A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S. § 3925(a). "Receiving" is

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯

. . .

> (2) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense no person is present[.]

18 Pa.C.S. § 3502(a)(2).

Trespass is defined as:

> (a) Buildings and occupied structures.--
>
> (1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he:
>
> . . .
>
> > (ii) breaks into any building or occupied structure or separately secured or occupied portion thereof.
>
> . . .
>
> (3) As used in this subsection:
>
> "Breaks into." To gain entry by force, breaking, intimidation, unauthorized opening of locks, or through an opening not designed for human access.

18 Pa.C.S. § 3503(a).

defined as "acquiring possession, control or title, or lending on the security of the property." *Id.* at § 3925(b).

We conclude the Commonwealth presented sufficient evidence from which a reasonable jury could find Reese guilty of the crimes beyond a reasonable doubt.

The Commonwealth presented evidence that: Reese, Hanes, and Phillips were staying at Trout's home; Reese, Hanes, and Phillips went to burglarize two houses; Reese, Hanes and/or Phillips entered the residences; Trout then drove to pick up the others; and Reese, Hanes, Phillips, and Trout returned to Trout's home with the stolen items. The evidence further established that Reese and his co-conspirators sold some stolen items to Simons and that Reese brought some stolen items to a flea market. We conclude this was sufficient to establish Reese had an agreement with Hanes, Phillips, and/or Trout to burglarize the two homes, an agreement to trespass on the properties, and an agreement to commit theft by receiving stolen property from the Rhueville Road home. *See Commonwealth v. Jones*, 874 A.2d 108, 122-23 (Pa.Super. 2005) (finding sufficient evidence of conspiracy where evidence established close relationship between appellant and his passengers, all three passengers were present at the scene, cocaine was in area where any passenger could have seen it and exercised control over it, and passengers made inconsistent statements regarding duration and purpose of trip); *Commonwealth v. Galindes*, 786 A.2d 1004, 1010 (Pa.Super. 2001) (finding sufficient evidence of conspiracy

to commit burglary where appellants knocked on front door to determine whether someone was home, took turns kicking back door, and, when discovered, fled and fired shots).

Further, the evidence was sufficient for the jury to find that Reese received stolen property. Testimony established that Reese participated in the burglaries where items were stolen; on at least one occasion, Reese accompanied Trout to sell items to Simons; and Trout drove Reese to a flea market in Andover, to which Reese brought some of the stolen items and did not return with them. Therefore, a jury could find beyond a reasonable doubt that Reese "acquir[ed] possession, control or title . . . of the property." 18 Pa.C.S. § 3925(b)

Reese next argues the verdict was against the weight of the evidence. He claims the combination of Phillips' testimony that Reese was not involved, which was "seemingly corroborated by" Wheeler, and Trout's and Hanes' inconsistent testimony establishes that the verdict was against the weight of the evidence. Reese's Br. at 9.

This court reviews a weight of the evidence claim for an abuse of discretion. *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Id.* (quoting *Commonwealth v. Widmer* 744 A.2d 745, 753 (Pa. 2000)). "Because the trial judge has had the opportunity to hear and see

the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence." *Id.*

A trial court should not grant a motion for a new trial "because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." *Clay*, 64 A.3d at 1055. "Rather, 'the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" *Id.* (quoting *Widmer*, 744 A.2d at 752). Courts have stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Id.* (quoting *Commonwealth v. Brown*, 648 A.2d 1177, 1090 (Pa. 1994)).

Although Phillips testified that Reese was not involved, and Reese challenged the credibility of other witnesses, the jury was free to credit the Commonwealth's evidence linking him to the crime. *See Commonwealth v. Page*, 59 A.3d 1118, 1130 (Pa.Super. 2013) (stating credibility determination "lies solely within the province of the factfinder"); *Commonwealth v. DeJesus*, 860 A.2d 102, 107 (Pa. 2004) ("The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence, and to assess the credibility of the

witnesses."). The trial court did not abuse its discretion in finding the verdict was not against the weight of the evidence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/19/2017