J-S37004-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DION KORNEGAY | : | |
| | : | |
| Appellant | : | No. 1188 EDA 2018 |

Appeal from the Judgment of Sentence April 5, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001939-2017

BEFORE:  BOWES, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED SEPTEMBER 10, 2019**

Dion Kornegay appeals from judgment of sentence of twelve to twenty-four years of imprisonment, which was imposed after a jury found him guilty of criminal trespass, conspiracy to commit criminal trespass, and conspiracy to commit aggravated assault.  Appellant challenges the sufficiency of the evidence underlying his convictions, and the legality of his consecutive sentences imposed at the two conspiracy convictions.  We affirm the convictions, vacate the sentence, and remand for resentencing.

On the night of January 24, 2017, Malika Adamson (the "victim"), attended a party with her friend/Godsister Lateefah Perry, and Perry's friend, Chantey, at Iddin William's house at 4513 North 13th Street in Philadelphia.  N.T. Jury Vol. 2, 12/5/17, at 36, 52-54.  Appellant, who was Ms. Perry's boyfriend, and his brother Beano, also were present at the party.  During the

party, the victim got into an argument with Beano and a physical fight ensued. Appellant and Ms. Perry broke up the fight. The victim left the party and called the police. *Id*. at 52-56. Police responded, prepared a report, but did not make any arrests. *Id*. at 34-35.

The next morning, the victim sought medical attention at Temple Hospital for injuries she sustained in the fight with Beano. *Id*. at 60-61. She also had several telephone communications with Appellant, Chantey, and Iddin regarding the fight. *Id*. at 62. The victim was adamant about having Beano arrested for assaulting her, but Appellant did not want her to involve law enforcement. Appellant attempted to convince the victim that she should settle her dispute with Beano as they would on the streets: by fighting someone they chose for her to fight or arranging for someone to fight Beano on her behalf. *Id*. at 62-64. The victim refused. *Id*.

During the course of the next two days, there were numerous communications between the victim, Appellant, and Iddin. On January 26, 2017, Appellant called the victim and told her that he had someone for her to fight. The victim advised him that she was not going to fight, and that she was going to get his brother locked up. Appellant told her not to go anywhere and that he was on his way to her house. *Id*. at 153. Transcripts of two 911 calls made by the victim shortly thereafter were introduced into evidence.[1]

---

[1] Exhibits setting forth the contents of the 911 calls were introduced into evidence, but the exhibits are not contained in the certified record.

Between 6:00 p.m. and 7:00 p.m., the victim was standing on the front steps of her home talking on the telephone. Her younger brother, her two young children, and the children of a friend were inside the home. *Id*. at 68-72. She saw Appellant, Iddin, his brother Si, and an unknown female walking towards her. *Id*. at 70. The victim turned and ran up the steps to the door of her home and the four individuals gave chase. She succeeded in getting inside, but met with resistance from Appellant and his cohorts when she tried to close the door behind her. As they tried to force their way into the victim's home, Appellant's hand crossed the threshold of the door. *Id*. at 72. It was not until the victim struck it with a brick that he removed it from the doorway and the victim and her brother were able to close the door. *Id*. at 73. As the victim called police, Appellant and his cohorts walked away from the residence towards 30th Street. *Id*. at 75.

When the victim saw her assailants walking away, she went outside and yelled, "The cops are on their way. Don't leave now." *Id*. at 75-76. At the time, Appellant and the others were located approximately a block away next to a black Toyota that the victim identified as belonging to Lateesha Perry. As the others entered the vehicle, Appellant retrieved a gun from his pocket and began shooting in her direction. *Id*. at 79. The victim ran back toward her home, and Appellant and the others sped off in reverse toward 29th Street in the black car. *Id*. at 80.

Detective Gino Andracchio and another detective recovered four fired cartridge casings from the scene at 30th Street and Gordon Street. Detective Andracchio also took photographs of bullet holes in residences located at 3015 and 3017 West Gordon Street. *Id*. at 177-84. These were introduced into evidence by the Commonwealth at trial. In addition to the testimony of the victim and several of the detectives, the Commonwealth introduced testimony from its ballistics expert that the cartridge casings were fired from the same .38 caliber weapon with a hemispherical firing pin, consistent with either a Glock 42 or a Kahr P380, but no weapon was recovered. Detective James Dunlap, a detective with the Cellular Analysis Survey Team, testified, based upon cell phone records obtained for Appellant and Ms. Perry, that at the time of the events, both of them were located within one square mile of the victim's house and in communication with each other.

Appellant was charged with attempted murder, aggravated assault, conspiracy to commit aggravated assault, burglary, conspiracy to commit burglary, firing a firearm without license, carrying a firearm on public streets or public property in Philadelphia, possession of a criminal instrument, criminal trespass, and conspiracy to commit criminal trespass. He and Ms. Perry were tried together before a jury. On December 8, 2017, the jury found Appellant guilty of criminal trespass, conspiracy to commit criminal trespass, and

conspiracy to commit aggravated assault.[2] The trial court deferred sentencing to permit completion of a presentence investigation. On April 5, 2018, the court sentenced Appellant to the following terms of incarceration: ten to twenty years for conspiracy to commit aggravated assault; a consecutive term of two to four years for conspiracy to commit criminal trespass; and a concurrent two to four years for criminal trespass.

Appellant filed a timely notice of appeal to this Court and complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. He presents four issues for our review:

> (1) Was the evidence insufficient to sustain a conviction of criminal trespass?
>
> (2) Was the evidence insufficient to sustain a conviction of conspiracy to commit criminal trespass?
>
> (3) Was the evidence insufficient to sustain a conviction of conspiracy to commit aggravated assault?
>
> (4) Did the [trial] court err in sentencing the Appellant on conspiracy to commit criminal trespass and conspiracy to commit aggravated assault where if there was a conspiracy there was but one conspiracy?

Appellant's brief at 3.

Appellant's first three contentions challenge the sufficiency of the evidence underlying his convictions. Our standard of review of sufficiency claims is well-settled:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict

---

[2] Co-defendant Perry was charged with the same offenses, but convicted only of conspiracy to commit aggravated assault.

when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. McClelland*, 204 A.3d 436, 441 (Pa.Super. 2019) (citations omitted).

Appellant first asserts that the evidence was insufficient to sustain his conviction of criminal trespass pursuant to 18 Pa.C.S. § 3503 (a)(1)(ii). He argues that the presence of his hand in the victim's doorway did not constitute "breaking in." Appellant's brief at 8.

The criminal trespass statute, 18 Pa.C.S. § 3503 (a)(1)(ii), provides: "A person commits an offense if, knowing that he is not licensed or privileged to do so, he: . . . . (ii) breaks into any building or occupied structured or separately secured or occupied portion thereof." *Id*. "Breaks into" under this subsection is defined as: "To gain entry by force, breaking, intimidation, unauthorized opening of locks, or through an opening not designed for human access." 18 Pa.C.S. § 3503(a)(3).

In *Commonwealth v. Gordon*, 477 A.2d 1342, 1348 (Pa.Super. 1984) this Court held that "proof of entry does not require proof of breaking-in; it is sufficient to prove that any part of the body of the intruder entered the premises." In *Commonwealth v. Giddings*, 686 A.2d 6, 12 (Pa.Super.

1996), (*overruled on other grounds by* **Commonwealth v. Clark**, 746 A.2d 1128 (Pa.Super. 2000)), we held that "the entry requirement of our criminal trespass statute is satisfied by insertion of an instrument which is held or manipulated by the defendant, or so closely associated with his body that it essentially becomes an extension thereof."

The record reflects that Appellant and his cohorts knew they did not have permission to enter the victim's home when she and her brother tried to bar their entry. Nonetheless, they made a concerted effort to force their way into the victim's home. In the process, Appellant's hand crossed the threshold of the door into the home. The unauthorized presence of Appellant's hand in the home was sufficient to support Appellant's conviction of criminal trespass. This claim warrants no relief.

Appellant asserts further that the evidence was insufficient to sustain his conviction of conspiracy to commit criminal trespass. He contends that there was no agreement among the four individuals to enter the victim's home. Rather, the trespass was spontaneous because they could not have anticipated that the victim would be located outside of her home when they arrived. Appellant's brief at 9-10. Additionally, Appellant contends that if he and the others had agreed to break into the victim's home, a locked door would not have stopped them, and they would have brought the tools necessary to facilitate entry. *Id*. at 10.

Criminal conspiracy is defined as:

A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he: (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903. In order to prove conspiracy, the Commonwealth must demonstrate that the defendant: "(1) entered an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy." *Commonwealth v. Chambers*, 188 A.3d 400, 409-410 (Pa. 2018) (quoting *Commonwealth v. Rios*, 684 A.2d 1025, 1030 (Pa. 1996)). The *Chambers* Court reiterated that an agreement to complete an undefined objective at an undefined time is not enough; "the agreement must rest upon the mutual specific intent to carry out a particular criminal objective." *Id*.

This Court held in *Commonwealth v. Irwin*, 134 A.3d 67, 76 (Pa.Super. 2016), that "circumstantial evidence may provide proof of the conspiracy." Additionally, an agreement need not be formal or explicit and may be a common understanding.

An agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

*Id*.

- 8 -

The record establishes that Appellant and three other individuals arrived at the victim's home together. There was evidence that co-defendant Perry was located in her car nearby. N.T. (Jury) Vol. 2, 12/5/17, at 70-71. Appellant and his cohorts pursued the victim as she ran into her home and together they attempted to gain entrance by preventing her from closing the door. *Id*. at 73. The trial court found this evidence of shared intent "more than sufficient to sustain the conspiracy to commit criminal trespass conviction." Trial Court Opinion, 11/29/18, at 5.

Viewing the record in the light most favorable to the Commonwealth, we agree there was evidence from which the jury could reasonably infer that Appellant and the others informally agreed to break into the victim's home to accomplish their objective. Appellant and his friends had unsuccessfully attempted to persuade the victim to abandon her intention to seek legal recourse against Beano in favor of street justice. When she refused, Appellant told her to stay home as he was on his way to her house with someone to fight her. Just a short time later, Appellant and his cohorts arrived together at the victim's house to carry out that plan. They pursued her when she ran for the safety of her home, and made a concerted effort to prevent her from closing the door barring them from the premises. Such evidence supports the jury's finding that Appellant and his cohorts shared the criminal intent to commit criminal trespass.

Appellant's third contention is that the evidence was insufficient to sustain his conviction of conspiracy to commit aggravated assault. Appellant asserts that there was no agreement to shoot at the victim because the conspiracy, if any, ended once the individuals walked away from her home. Appellant maintains that the shooting was a spontaneous response to the victim's taunting. Appellant's brief at 11-12. The presence of three other individuals at the scene when he made the decision to shoot in the direction of the victim was insufficient to sustain a conviction for conspiracy to commit aggravated assault.

A person commits aggravated assault when he: "1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702 (a)(1). A conspiracy to commit aggravated assault requires proof of an agreement or shared criminal intent of two or more persons to cause serious bodily injury.

Appellant characterizes the aggravated assault as his act of firing shots at the victim. However, the trial court found the evidence that Appellant and the others arrived at the victim's house together, attempted to break-in together in order to assault her, and left the scene together after Appellant shot at her, sufficient to sustain the conviction for conspiracy to commit aggravated assault.

The communications between the victim and Appellant and his co-conspirators during the two days prior to the events herein evidence an attempt to convince the victim to handle the matter with Beano "like they would in the streets," instead of bringing law enforcement into the situation. N.T. (Jury) Vol. 2, 12/5/17, at 62-64. Despite her refusal, Appellant stated that he was getting someone to fight her. On the evening of January 26th, Appellant told the victim not to go anywhere and that he was on his way to her house. *Id*. at 153. Appellant and his cohorts arrived together shortly thereafter, but were thwarted in their efforts to assault the victim. Such evidence was sufficient to permit the jury to conclude that Appellant conspired with at least two other individuals to cause serious bodily injury to the victim. No relief is due.

Appellant's final contention is that the trial court erred in sentencing him on both conspiracy to commit criminal trespass and conspiracy to commit aggravated assault. Appellant's brief at 13. He contends that, if there was a conspiracy, there was only one conspiracy, and cites 18 Pa.C.S. § 903(c) in support of his position. That provision defines conspiracy with multiple criminal objectives. It provides that, "If a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship."

Appellant contends that in determining whether there was one conspiracy or multiple conspiracies, there are factors to be considered that were identified in **Commonwealth v. Savage**, 566 A.2d 272 (Pa.Super. 1989).  **See also Commonwealth v. Barnes**, 871 A.2d 812 (Pa.Super. 2005).  The factors are the number of overt acts in common; the overlap in personnel; the time period during which the acts took place; the extent to which the purported conspiracies share common objectives; and the degree to which interdependence is needed for the overall operation to succeed.  **Savage**, **supra** at 278.  Appellant maintains that application of these factors to the circumstances herein establishes that there was only one conspiracy as the personnel overlapped, the victim and defendants were the same, and the conspiracies occurred in the same location just minutes apart.  Hence, Appellant contends that the trial court erred in imposing sentences on both criminal conspiracy convictions as there was only one conspiracy.

The Commonwealth concedes there is overlap in the facts establishing elements of each conspiracy, and "does not oppose a remand for the limited purpose of resentencing [Appellant] on a single count of conspiracy." Commonwealth's brief at 16.  It maintains that it was not precluded from pursuing multiple conspiracies at trial, but that the trial court could not impose separate sentences on multiple conspiracies unless they "were committed with

a separate objective in mind." *Id*. at 17 (quoting *Commonwealth v. Bright*, 522 A.2d 573, 577 (Pa.Super. 1987)).[3]

In *Commonwealth v. Jacobs*, 39 A.3d 977 (Pa. 2012), our Supreme Court examined § 903 and § 906 in determining whether convictions merged, or just sentences, in cases involving multiple inchoate crimes. The Court clarified that "it is not a violation of Section 906 for the jury to find a defendant guilty of multiple inchoate crimes designed to culminate in the same crime; a problem arises only when the trial court imposes multiple sentences for those inchoate crimes designed to culminate in the same crime." *Id*.; *see* § 906 (providing that "a person may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime.").[4] It added further that "inchoate crimes merge [for sentencing purposes] only when directed to the commission of the same crime, not merely because they arise out of the same incident." *Id*. at 983. In *Jacobs*, charges of attempted escape and conspiracy to commit escape were designed to culminate in the same crime, and thus, the Court held that the appellant

---

[3] We appreciate the candor of the Commonwealth.

[4] The Court interpreted the word "convict" in § 906 to mean the entry of judgment of sentence, rather than the jury's finding of guilt. Accordingly, the *Jacobs* Court found that it was not a violation of § 906 for a jury to find a defendant guilty of multiple inchoate crimes designed to culminate in the same crime.

could receive only one sentence for his crimes. *Compare Commonwealth v. Graves*, 508 A.2d 1198 (Pa. 1986) (holding that convictions for conspiracy and solicitation did not merge for sentencing purposes where defendant conspired to assault three police officers and solicited another gang member to murder one of the other officers as they were directed at different ends).

Recently, in *Commonwealth v. Kirkland*, __ A.3d __, 2019 Pa. Super. Unpub. LEXIS 2666 (Pa.Super. July 12, 2019), this Court *sua sponte* addressed a legality of sentence issue stemming from two conspiracy convictions upon which separate sentences were imposed in a non-precedential decision. After applying the factors identified in *Savage*, *supra*, this Court determined that there was one conspiracy as all of the crimes progressed from a single understanding, occurred at the same time and place, and were committed by the same cohorts who acted in concert. We concluded that there was a common plan to achieve a single goal: the robbery of a pizza deliveryman. Thus, the trial court erred in imposing sentence for both conspiracy to commit burglary and conspiracy to commit aggravated assault.

Although we are not bound by *Kirkland*, we find its facts analogous and its reasoning persuasive.[5] Here, as in *Kirkland*, the evidence establishes a single continuing conspiracy to commit aggravated assault. Appellant and his

---

[5] Based on a recent change in Pa.R.A.P. 126(b)(2), effective May 1, 2019, any memorandum decision of this Court filed after that date may be cited for its persuasive value.

co-conspirators arrived at the victim's home with the intention to "handle the matter like they would in the streets," which meant subjecting the victim to an assault from the unidentified female. In order to accomplish that goal, the co-conspirators either would have accosted the victim outside her home, peacefully gained access to her in her home, or forced their way into her home. In any event, the criminal trespass was but one step in furtherance of the larger plan to assault the victim. Accordingly, although the concerted forcible entry of her home constituted a separate offense, it was a part of the overall agreement to assault the victim. For these reasons, we find that there was one continuing conspiracy and that the charges of conspiracy to commit criminal trespass and conspiracy to commit aggravated assault should have merged for sentencing purposes.

Herein, Appellant was sentenced to consecutive terms of imprisonment at the two conspiracy counts. In addition, this is a multi-count case, and the sentence imposed for criminal trespass runs concurrently to the sentence for conspiracy to commit criminal trespass. Since the overall sentencing scheme is disturbed by our holding that Appellant should not have been sentenced on the conspiracy to commit criminal trespass, all of the sentences must be vacated, and the matter remanded for resentencing.

Therefore, we affirm the convictions, but vacate the sentence in its entirety, and remand for resentencing in accordance herewith.

Convictions affirmed.  Sentences vacated.  Remanded for resentencing.

Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/10/19