J-A26001-18

2019 PA Super 34

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DIANE MCCLELLAND, | |
| Appellant | No. 398 WDA 2017 |

Appeal from the Judgment of Sentence Entered June 6, 2013
In the Court of Common Pleas of Washington County
Criminal Division at No(s): CP-63-CR-0002056-2011

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MURRAY, J.

OPINION BY BENDER, P.J.E.:                    **FILED FEBRUARY 11, 2019**

Appellant, Diane McClelland, appeals from the judgment of sentence of

24½-49 years' incarceration, imposed following her conviction for conspiracy,

dealing in proceeds of unlawful activity, receiving stolen property, and

providing false information to law enforcement.  Appellant challenges the

sufficiency and weight of the evidence supporting her convictions, and the

discretionary aspects of her sentence.  After careful review, we reverse

Appellant's conviction for conspiracy to commit homicide, and remand for

resentencing, but otherwise leave her remaining convictions intact.

The trial court summarized the facts adduced at trial as follows:

> During the jury trial conducted February 26, 2013, through
> March 1, 2013, the jury heard evidence that [Appellant] and her
> co-defendants, [Appellant]'s husband and step-son, were
> engaged in numerous burglaries and thefts of cash from the home
> of Evelyn Stepko, their elderly neighbor, then 92 years of age,

who lived alone, beginning in August of 2009 and continuing through July 18, 2011, when Evelyn Stepko was found murdered in her home.

It was established at trial that police had responded to reports on several occasions to investigate thefts reported by the victim. Testimony demonstrated that the victim had hidden large amounts of cash in her home, and that much of the currency dated in the 1980's and the 1990's. Although there was no evidence that [Appellant] physically participated in the invasions of Ms. Stepko's home, … it was established that [Appellant] was handling all of the cash proceeds of the burglaries: [Appellant] made the majority of the deposits of cash stolen from Ms. Stepko, large amounts of moldy and musty currency dated in the 1980's and 1990's were found in the home of [Appellant] and her co-defendant husband, David A. McClelland; [Appellant] made the final decisions on negotiations for the purchase of two pieces of real estate using stolen cash; [Appellant] reimbursed her co-defendant step-son when her co-defendant husband made a purchase from the step-son's share of the "loot"; [Appellant] made large cash purchases with the proceeds of the burglaries including the purchase of a late model Lincoln Navigator and the costs of remodeling … her home; and [Appellant] admittedly accepted cash proceeds, which she knew were from at least one burglary, but continued to deal in the proceeds of the burglaries thereafter.

[Appellant] represented to authorities that the lavish expenditures were the result of lottery and casino winnings. However, testimony at trial established that [Appellant] and her codefendants gambled large sums of money at the Meadows Casino in Washington, Pennsylvania, and neither [Appellant] nor her co-defendants, ever won a jackpot.

At no time did [Appellant] report the criminal activity to police or attempt to abandon the conspiracy. Also, after M[]s. Stepko's murder was discovered, [Appellant] gave conflicting statements to police regarding her husband's whereabouts on the day of the murder. [Appellant]'s husband ultimately pled guilty to Ms. Stepko's murder on October 15, 2012, committed during an invasion of her home. [Appellant]'s step-son was also found guilty of Ms. Stepko's murder on June 6, 2013, following a trial.

Trial Court Opinion (TCO), 10/25/17, at 5-6 (citations omitted).

At the conclusion of her trial, the jury convicted Appellant of dealing in proceeds of unlawful activity (DPUA), 18 Pa.C.S. § 5111(a)(1); receiving stolen property (RSP), 18 Pa.C.S. § 3925; hindering apprehending or prosecution (HAP), 18 Pa.C.S. § 5105(a)(5) ("provides false information to a law enforcement officer"); and criminal conspiracy,[1] 18 Pa.C.S. § 903. On June 6, 2013 (order filed June 21, 2013), the trial court sentenced Appellant to consecutive terms of 20-40 years' incarceration for criminal conspiracy to commit homicide, 2-4 years' incarceration for DPUA, 2-4 years' incarceration for RSP, and 6-12 months' incarceration for HAP, for an aggregate term of 24½-49 years' incarceration.[2] Appellant filed a timely post-sentence motion, which was denied by the court on October 17, 2013. Appellant filed a timely notice of appeal, and a timely, court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued its first Rule 1925(a) opinion on March 31, 2014.

_____

[1] The verdict slip contained a single entry for criminal conspiracy at count 2, with multiple criminal objectives listed, as follows: "criminal conspiracy to commit criminal homicide and/or dealing in proceeds of unlawful activity and/or burglary and/or theft by unlawful taking[.]" Verdict Slip, 3/5/13, at 1 (unnecessary capitalization omitted). That entry was immediately followed by an interrogatory asking the jury to determine if the Commonwealth "proved one or more of the following as the objectives of the conspiracy or the natural and probable consequences of a co-conspirator's conduct," where criminal homicide, dealing in proceeds of unlawful activity, burglary, and theft by unlawful activity were subsequently listed. *Id.* (unnecessary capitalization omitted). The jury circled "Yes" by each of the four listed crimes. *Id.*

[2] Appellant received no further penalty for the conspiracies to commit the lesser offenses.

On August 13, 2015, this Court affirmed Appellant's judgment of sentence. *See Commonwealth v. McClelland*, 131 A.3d 93 (Pa. Super. 2015) (unpublished memorandum). However, as we noted in that memorandum, Appellant's "counseled brief fail[ed] to conform to even the basic requirements of appellate advocacy." *Commonwealth v. McClelland*, No. 1806 WDA 2013, unpublished memorandum at 2. As such, we deemed all of Appellant's issues waived. *Id.* at 3.

Appellant subsequently filed a timely, *pro se* PCRA petition seeking reinstatement of her direct appeal rights, which was later amended by counsel on September 16, 2016. By order dated March 1, 2017, the trial court granted the petition, thereby reinstating Appellant's direct appeal rights. Appellant then filed a new notice of appeal on March 8, 2017, and a timely, court-ordered Rule 1925(b) statement on April 24, 2017. The trial court issued a new Rule 1925(a) opinion on October 25, 2017.

Appellant now presents the following questions for our review:

  I.   Whether there was sufficient evidence to convict Appellant of [DPUA]?

  II.  Whether there was sufficient evidence to convict Appellant of conspiracy to commit homicide?

 III.  Whether there was sufficient evidence to convict Appellant of conspiracy to [DPUA]?

 IV.  Whether there was sufficient evidence to convict Appellant of conspiracy to commit burglary?

  V.  Whether there was sufficient evidence to convict Appellant of conspiracy to commit theft by unlawful taking?

VI.     Whether there was sufficient evidence to convict Appellant of [RSP]?

VII.    Whether there was sufficient evidence to convict Appellant of [HAP]?

VIII.   Whether the trial court erred when it denied Appellant's post-trial motion for judgment of acquittal for [DPUA]?

IX.     Whether the trial court erred when it denied Appellant's post-trial motion for new trial?

X.      Whether the trial court erred when it denied Appellant's post-trial motion to modify sentence?

XI.     Whether the [verdict] was against the weight of the evidence?

Appellant's Brief at 3 (unnecessary capitalization omitted).

The first nine questions presented for our review concern the sufficiency of the evidence. Our standard of review of sufficiency claims is well-settled:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

Appellant first asserts that the evidence was insufficient to convict her of DPUA. The Crimes Code defines that offense, in pertinent part, as follows:

**(a) Offense defined.--**A person commits a felony of the first degree if the person conducts a financial transaction under any of the following circumstances:

(1) With knowledge that the property involved, including stolen or illegally obtained property, represents the proceeds of unlawful activity, the person acts with the intent to promote the carrying on of the unlawful activity.

18 Pa.C.S. § 5111(a)(1).

Appellant argues that "she believed the money her husband possessed had derived from his earnings from a private lottery as well as a Massachusetts casino, her biweekly paycheck, and her husband's disability check." Appellant's Brief at 15. However, Appellant concedes that she "admitted to having knowledge of her husband's involvement in a burglary on one occasion." *Id.* Nevertheless, she asserts that she "implored him to cease all [criminal] activities" at that time. *Id.* Thus, as "Section 5111 requires intent to promote and carry on the unlawful activity," Appellant argues that "there is insufficient evidence that she possessed such intent." *Id.*

The trial court rejected this claim, stating:

[I]t was unquestionably established that [Appellant] knew that the property—the cash—was the proceeds of "unlawful activity"— here, burglary—and conducted "financial transactions" by making purchases with that cash and depositing the cash in various banks. 18 Pa.C.S. § 5111. Given [Appellant]'s continued dealings with those funds, her admitted awareness of the burglaries, and the other evidence of a conspiratorial relationship between [Appellant], her husband, and her step-son, it was reasonable for the jury to infer that her transactions with the stolen money at least in part "promote[d] the carrying on of the unlawful activity." *Id.* Therefore, the evidence was sufficient to convict [her] on the charge of [DPUA].

TCO at 9 (unnecessary capitalization omitted).

- 6 -

We agree with the trial court. Appellant admitted that she had knowledge of at least one burglary and continued to accept cash from her husband and spend it. Moreover, the jury was free to discredit her statement that she thought the money had come from gambling winnings. Therefore, Appellant's first claim lacks merit.

For ease of disposition, we will address Appellant's second sufficiency claim, regarding conspiracy to commit homicide, last. Thus, we next consider whether there was sufficient evidence to convict Appellant of conspiracy to commit the crimes of burglary, DPUA, and theft.

> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> > (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
> >
> > (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903(a). Moreover, "[i]f a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship." 18 Pa.C.S. § 903(b).

Here, as discussed by the trial court, the evidence produced by the Commonwealth at trial clearly established a conspiracy to burgle the victim's home, and to receive and spend the illicit gains derived therefrom:

[B]ased on the evidence and testimony presented at trial, it was reasonable for the jury to believe that [Appellant] participated in the numerous burglaries of M[]s. Stepko's home, from August 2009 through July 2011, in a material way. [Appellant] admitted knowledge of the thefts which resulted from the burglaries and [she] profited handsomely from the same. She made significant cash purchases from the proceeds of the burglaries, including the late model Lincoln Navigator SUV and a house and property next door to hers. The obvious inference drawn from the testimony was that [Appellant] controlled the money that was stolen and controlled the accounts to which she deposited much of the cash. The evidence also showed that [Appellant] made multiple significant trips to the Meadows Casino in close temporal proximity to Ms. Stepko's reports of burglaries.

From this evidence, the jury found circumstances that showed the [Appellant] to be a willing and active member of the conspiracy to commit the burglaries and thefts, and to make the aforementioned purchases and bank deposits with the proceeds of those crimes.

TCO at 10-11.

Appellant essentially argues that there was no evidence that she "agreed to aid or act in conformity with [her husband's] plans to burglarize." Appellant's Brief at 19. We disagree. Even assuming that Appellant did not initially have knowledge of her husband's illegal activities, she became part of the conspiracy to commit burglary, DPUA, and theft when she continued to deal with the illicit funds after learning that her husband had burgled money from the victim's home. The jury was free to disbelieve her claims to the contrary. Accordingly, we conclude that the evidence was sufficient to convict Appellant of a conspiracy to commit those crimes.

Next, we consider Appellant's assertion that, even if she was a participant in a conspiracy to commit the theft-related crimes of burglary,

DPUA, and theft, the evidence was still insufficient to establish her guilt for conspiracy to commit homicide. Here, there is no allegation that homicide was the object of the conspiratorial agreement between Appellant, her husband, and her stepson. Rather, the alleged (and proven) objectives of the conspiracy at issue were to burglarize the victim's home of cash, receive that stolen property, and spend those proceeds unlawfully.

If homicide is not the object of a conspiracy, then, by definition, there is no conspiracy to commit criminal homicide. However, the trial court attempts to justify the jury's verdict on conspiracy to commit homicide as follows:

> Once th[e conspiracy to commit burglary] was established, the jury could then reasonably find that Evelyn Stepko's murder was committed in furtherance of that conspiracy, and that the murder was the natural and probable consequence of the conspiracy to commit the burglaries and thefts. *See* [*Commonwealth v.*] *Murphy*, … 844 A.2d [1228,] 1238 [(Pa. 2004)]. The law considers burglary to be a violent crime, *Commonwealth v. Chester*, … 101 A.3d 56, 64 ([Pa.] 2014); *Commonwealth v. Spotz*, … 47 A.3d 63, 104 ([Pa.] 2012); *Commonwealth v. Small*, … 980 A.2d 549, 576 ([Pa.] 2009), and the repeated unwelcome invasions of an elderly person's home undeniably involves the probable result of serious injury or death to the victim.
>
> The jury thus found that the death of Ms. Stepko was the natural and probable consequence of the conspiracy, [*Commonwealth v.*] *Eiland*, … [301] A.2d [651,] 653 [(Pa. 1973)], and that finding was reasonable in light of the testimony and evidence presented. Therefore, the evidence was sufficient to sustain [Appellant]'s conviction on the charge[] of criminal conspiracy to commit homicide[.]

TCO at 11-12 (unnecessary capitalization omitted).

- 9 -

As is apparent from the above passage, the trial court conflates the crimes of murder and the wholly distinct crime of conspiracy to commit homicide. It may well be the case that a homicide was the natural and probable consequence of the conspiracy to burglarize the victim's home, however, Appellant was not charged with a homicide offense. She was charged with the inchoate offense of conspiracy to commit homicide.

"The crime of conspiracy is a 'specific intent crime,' in that it requires a specific intent of promoting or facilitating the commission of the crime which is the object of the conspiracy." ***Commonwealth v. Weimer***, 977 A.2d 1103, 1111 (Pa. 2009). Here, the trial court does not even state that the evidence was sufficient to establish that Appellant intended to promote or facilitate the commission of a homicide. Instead, the court specifically identified the burglary, theft, and DPUA as the target offenses of the conspiracy. Our independent review of the record fails to uncover any evidence of Appellant's intent to participate in or facilitate a homicide.

Moreover, the trial court does not offer any case law suggesting that a conspiracy to commit homicide can arise as the 'natural and probable consequence' of a wholly different conspiracy offense. In no cases cited by the court was a defendant held accountable for a conspiracy offense based on their commission of a separate conspiracy offense. In ***Eiland***, ***supra***, the defendant was held culpable for a homicide based on his participation in a conspiracy to commit homicide. In ***Murphy***, ***supra***, the Supreme Court determined that the evidence was sufficient to convict the defendant for the

delivery of heroin due to his participation in a conspiracy to deliver heroin. Neither **Chester**, **Small**, nor **Spotz**, involved conspiracy offenses.

While a killing may be the natural and probable consequence of a conspiracy to commit burglary, that logic does not extend to cover the inchoate crime of conspiracy to commit homicide. An agreement to kill is not the natural and probable consequence of a conspiracy to burglarize. Indeed, if it were, then every co-conspirator to a robbery or burglary would be simultaneously guilty of conspiring to kill the victim of such offenses. The trial court's logic, when taken to its inevitable conclusion, is patently absurd and, thus, untenable as a legal theory.

Our Supreme Court has contrasted the "*general rule* of law pertaining to the culpability of conspirators" with "the principle that first degree murder is distinguished from all other degrees of murder by the existence of a specific premeditated intent to kill harbored by the accused." **Commonwealth v. Wayne**, 720 A.2d 456, 463-64 (Pa. 1998) (emphasis added). The Court went on to warn that,

> [i]f the general rule of co-conspirator liability applied to eliminate the need to establish the existence of specific intent, then an accused conspirator could be culpable for first degree murder without proof that the accused shared *the specific intent to kill*, the element which distinguishes first degree murder from all other forms of homicide. Such a result was clearly not contemplated by the legislature when it delineated the elements distinguishing the various degrees of homicide. … To be guilty of first degree murder, each co-conspirator must individually be found to possess the mental state necessary to establish first degree murder-*the specific intent to kill*.

*Id.* at 464 (emphasis in original). This logic applies equally to the crime of conspiracy to commit homicide, because a conviction for such a conspiracy also requires proof of the specific intent to kill, **Weimer**, **supra**, which is identical to the *mens rea* requirement for first degree murder.

Accordingly, for the aforementioned reasons, we conclude that the evidence was not sufficient to prove Appellant's participation in a conspiracy to kill the victim in this case. There was no evidence proffered to establish Appellant's specific intent to kill the victim. The only theory upon which the jury could have concluded that Appellant was guilty of a conspiracy to commit homicide is not legally cognizable. As such, we reverse Appellant's conviction with respect to the offense of conspiracy to commit homicide.[3]

Next, Appellant asserts that the evidence was insufficient to convict her of RSP. Appellant's argument is this regard is cursory, composed of a single paragraph, the essence of which can be boiled down to a single phrase, where Appellant argues, "the Commonwealth did not adequately link the existence of the money and whether Appellant knew the property was stolen." **See** Appellant's Brief at 19.

_____

[3] Appellant was charged and convicted of a single conspiracy offense, encompassing multiple criminal objectives, including homicide. Thus, we reverse her conviction only insofar as it contemplated homicide as a target offense. The trial court is thus permitted to resentence Appellant for her participation in a conspiracy to burglarize the victim. **See** 18 Pa.C.S. § 905 (a) (decreeing that conspiracy is a crime of the "same grade and degree as the most serious offense which is … an object of the conspiracy"). In the circumstances of this case, upon resentencing, Appellant's conspiracy offense must be graded as the equivalent to the burglary offense to which she conspired.

As discussed above, this issue is without merit. Even according to her own testimony, Appellant eventually learned of her husband's burglaries, and failed to return the illegal proceeds derived therefrom. "A person is guilty of theft if he intentionally receives, **retains**, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S. § 3925(a) (defining the offense of RSP) (emphasis added). Clearly Appellant, by her own admission, retained proceeds she knew to be stolen.

Next, Appellant argues that evidence was insufficient to convict her of HAP by providing false information to law enforcement officers. Her argument, in its entirety, is as follows:

> Under the Pennsylvania Crimes Code, an individual may be convicted of [HAP] by providing false information to law enforcement where the individual, "with [intent] to hinder the apprehension, prosecution, conviction or punishment of another for a crime … [the individual] provides false information to a law enforcement officer." 18 Pa.C.S. § 5105(a)(5).
>
> In Appellant's initial interview with police following [her husband's] arrest, she stated that she and David were waiting for a washing machine to be delivered and that she and David watched movies most of the day [of the murder]. [N.T., 2/27/13, at] 244. She noted that David left the home at least two times that day-once around 1:00 p.m. when he noticed Ms. Stepko in her backyard, and again later in the evening to fix an umbrella on the deck. *Id.* [at] 246-[]47, 278-[]80. In her second interview with police, she again stated that the two were home throughout the day waiting for the washing machine. [N.T., 3/1/13, at] 621. She also stated that David did yard work that day and that she remembers seeing him on the deck, presumably fixing the umbrella. *Id.*

The Commonwealth attempted to establish that because she did not mention that the two watched movies that day, she lied to the police about David's whereabouts on the day of Ms. Stepko's death. *Id.* An omission of a minor detail about watching movies in her second interview is a far reach from providing false information to police in an attempt to shield another from punishment of a crime. As such, the Commonwealth failed to meet its burden of proof and Appellant should be acquitted of [HAP] by providing false information to law enforcement.

Appellant's Brief at 19-20 (unnecessary capitalization omitted).

The trial court did not address this argument with much specificity:

The evidence presented here established that during the course of the investigation [Appellant] made several contradictory statements to police officers regarding her husband's whereabouts and activities on the day of Ms. Stepko's murder, while those officers were pursuing her husband's prosecution. Taking those false statements along with the other evidence presented in its totality, the jury could reasonably infer that [Appellant]'s intent in making those contradictory statements to the police was to hinder their efforts to apprehend and prosecute her husband.

TCO at 13.

Appellant is not entitled to relief, as she fails to cite any legal authority for the proposition that "[a]n omission of a minor detail" is not a false statement for purposes of Section 5105. Here, Appellant's statements to police essentially provided an imperfect alibi for her husband on the day of the murder. Thus, her statement regarding his specific activities on that day was not dealing with a trivial matter. Furthermore, Appellant did not merely omit a detail—she initially claimed they were watching movies all day while waiting for a washing machine delivery. At the next interview, she claimed her husband was outside working for a good portion of the day. *See* N.T., 3/1/13, at 620-21.

- 14 -

Moreover, Appellant provided more false statements to police than her argument suggests. Appellant initially told police that she had no knowledge of her husband's taking money from the victim's home, and that their expenditures, extravagant in relation to their income, were paid with gambling winnings. N.T., 2/27/13, at 252-58. Later, during the second interview with police, she admitted that she knew, before the first interview, that her husband had received at least some of that money from burglarizing the victim's home. N.T., 3/1/13, at 611-12. Thus, we conclude that the evidence was more than sufficient to support Appellant's conviction for HAP by providing false information to law enforcement officers.

In Appellant's eighh issue, she claims the trial court erred by denying her motion for judgment of acquittal on the charge of DPUA and conspiracy to DPUA. This claim concerns the sufficiency of the evidence, and is functionally identical to issues 1 and 3. As discussed above, those claims lack merit.

Appellant next claims that the trial court erred by denying her post-sentence motion for a new trial. Appellant asserts that the arguments contained therein "were based on the sufficiency of the evidence presented at trial[,]" and overlap with the previously-raised sufficient claims. Appellant's Brief at 21. Accordingly, we conclude this claim lacks merit.

In her penultimate claim, Appellant asserts that the trial court erred when it denied her post-sentence motion to modify her sentence. As we are remanding for resentencing in light of our decision to reverse Appellant's

conviction for the crime of conspiracy to commit homicide, this issue is rendered moot.

Finally, Appellant claims the verdict was against the weight of the evidence. We apply the following standard of review to a challenge that a verdict is against the weight of the evidence:

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
>> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:
>
>> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

- 16 -

***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (internal citations omitted).

> Appellant provides less than a paragraph of argument, contending that:

> At trial, the Commonwealth failed to prove that Appellant had knowledge of David's crimes. She believed David made money from his winnings at a Massachusetts casino and a private lottery. Further, Appellant was not involved in the planning of the burglaries that led to Ms. Stepko's death. The jury's verdict was against the weight of the evidence, and thus, the trial court erred in denying post-trial motions in that respect.

Appellant's Brief at 23.

This underdeveloped argument is virtually indistinguishable from Appellant's sufficiency claims, and we reject it for the same reasons. The jury was free to reject Appellant's incredulous explanation for the source of their income. Moreover, Appellant misstates the facts adduced at trial, as she admitted that the she knew about her husband's participation in at least one burglary, and yet she continued to deal with those ill-gotten gains. Accordingly, this claim is meritless.

In sum, we reverse Appellant's conviction for conspiracy to commit homicide, but otherwise leave her remaining convictions intact, including what remains of her conspiracy offense (without homicide as a target of the conspiracy). As this likely impacts the sentencing scheme concocted by the trial court, we vacate Appellant's judgment of sentence in its entirety and remand for resentencing. ***See Commonwealth v. Goldhammer***, 517 A.2d 1280, 1283 (Pa. 1986) (stating that where an appellate court upsets the trial court's overall sentencing scheme by vacating a conviction in a multiple-count

appeal, the appellate court must remand for re-sentencing because sentencing lies within the sole discretion of the trial court).

Judgment of sentence **reversed** in part, **vacated** in part. Case **remanded** for resentencing. Jurisdiction **relinquished**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/11/2019