J-S55025-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARCEL RENNIER MASON | : | |
| | : | |
| Appellant | : | No. 861 WDA 2019 |

Appeal from the Judgment of Sentence Entered June 4, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0000139-2018

BEFORE:   BOWES, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:                    **FILED: JUNE 4, 2021**

Marcel Rennier Mason (Appellant) appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas, following his conviction of one count each of hindering apprehension or prosecution ("hindering apprehension") and criminal conspiracy.[1]  Appellant argues the trial court erred in finding the Commonwealth presented sufficient evidence to support a guilty verdict for both charges and abused its discretion in admitting text messages into evidence without properly authenticating them.  Because we conclude the evidence was insufficient to support Appellant's conviction of hindering apprehension, we reverse that conviction, and vacate the judgment

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 5105(a)(5), 903.

of sentence on that charge. We affirm Appellant's judgment of sentence with respect to his conspiracy conviction.

The trial court summarized the facts as follows:

This case originated when New Kensington, Pennsylvania Police Officer Brian Shaw was shot and killed while trying to make a traffic stop on November 17, 2017. The investigation quickly developed Rahmael Holt as a suspect, and an arrest warrant for Holt was obtained by the Allegheny County Sheriff's Office. The FBI Greater Pittsburgh Safe Streets Task Force obtained information that Holt had been in contact with his cousin, [Appellant. Appellant] lived with his girlfriend[, Asya Benson,] at 833 Hinnerman Street, Duquesne, PA. The investigation also disclosed that [Appellant] was wanted by the Allegheny County Police and the Pennsylvania Board of Probation and Parole Police. Investigating Officers went to the Hinnerman Street address and [Benson], [Appellant's] girlfriend, consented to and allowed police to enter the residence to execute the arrest warrants for the [Appellant]. [Appellant] was found lying on a bed in the living room[2] and taken into custody, without incident.

\*　　\*　　\*

During questioning by police about Rahmael Holt's whereabouts, [Appellant] repeatedly denied having any contact with Holt and stated, "[Appellant] had not seen him in weeks and that he (Holt) was not welcome in the residence[."] (Affidavit of probable cause November 20, 2017).

Trial Ct. Op. 6/16/20, at 3-4.

Later, on November 29, 2017, Westmoreland County Detective Ray Dupilka interviewed Appellant in the medical unit of the Allegheny County Jail. The trial court summarized that interview as follows:

---

[2] We note Appellant is "paralyzed" and thus is confined to a bed in his living room. N.T., 3/7/19, at 11; Appellant's Brief at 21.

- 2 -

[Appellant] told the detective that Rahmael Holt had come to [his] residence on Hinnerman Street on November 18, 2017. [Benson] let Holt in the residence where he stayed for the day. [Appellant] indicated that he learned of a media account of Holt being wanted for the murder of Officer Shaw, and that he advised Holt that he could no longer stay at his residence[.] [Appellant] indicated that [Benson] then drove Mr. Holt from the residence to another location. [Appellant] did not inform law enforcement about the location of Mr. Holt prior to his arrest. This account differed, significantly, from the investigating officer['] s prior initial contact with [Appellant].

Trial Ct. Op. 3.

The evidence presented at Appellant's bench trial also revealed that at 7:32 p.m. on November 20, 2017, Benson purchased one TracFone. N.T., 2/14/19, at 31. Appellant told Detective Dupilka the TracFone belonged to Benson. N.T., 3/7/19, at 13. However, the TracFone was recovered from Appellant's living room "on the couch [ ] to the immediate left of the bed . . . located in the living room." N.T., 2/14/19, at 33. Forensic examination of the TracFone revealed that it was used on November 20, 2017, to communicate with another TracFone, which was recovered at the location where Holt was apprehended. *See* N.T., 3/7/19, at 21-25. An incoming message on the phone recovered from Appellant's residence, which originated from the phone recovered with Holt, stated: "[T]ell [Benson] I said thank you for everything . . . what she did for me. She know how I feel about her." *Id.* at 22-23. Additional messages requested the receiver — allegedly Appellant — to "[g]et rid of" clothing and an I.D. left "upstairs" and "erase" all text messages. *Id.* at 23-24.

Appellant was subsequently charged with one count of hindering apprehension at subsection (a)(5). *See* 18 Pa.C.S. § 5505(a)(5) ("provides false information to a law enforcement officer"). Appellant filed a pre-trial motion challenging, *inter alia*, whether the Commonwealth could establish a *prima facie* case that Appellant intended to hinder the apprehension of Holt by providing false information to police. *See* Appellant's Omnibus Pretrial Motion, 4/19/18, at ¶¶ 10-13. Although no order appears on the docket, the parties concede the trial court denied that motion. *See* N.T., 3/7/19, at 3. On February 4, 2019, the Commonwealth filed a motion to amend the criminal information to add the following two charges: (1) one count of hindering apprehension at Subsection (a)(2), and (2) one count of criminal conspiracy. *See* 18 Pa.C.S. 5105(a)(2) (a person is guilty of hindering apprehension if he "provides or aids in providing a weapon, transportation, disguise or other means of avoiding apprehension or effecting escape"). The court granted the motion on February 14, 2019, before the start of Appellant's non-jury trial. *See* N.T., 2/14/19, at 6.

As noted above, the case proceeded to a non-jury trial, which commenced on February 14, 2019, and continued on March 7, 2019. The trial court found Appellant guilty of hindering apprehension at subsection (a)(5), and criminal conspiracy. The court found Appellant not guilty of hindering apprehension at subsection (a)(2).

On June 4, 2019, the trial court sentenced Appellant to a term of 15 to 30 months' imprisonment on each of the two charges to be served

concurrently. Appellant filed this timely appeal on June 12, 2019. Thereafter, Appellant complied with the trial court's order directing him to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises two issues for our review:

1. Did the Trial Court err in finding that the evidence introduced at trial was sufficient to support a guilty verdict as to the crimes of Hindering Apprehension and Criminal Conspiracy, when no reasonable inference could be drawn from the evidence that [Appellant] intended to hinder the apprehension of [Holt] nor conspired with [Benson] to do so?

2. Did the Trial Court abuse its discretion by admitting text messages into evidence without properly authenticating that such messages were sent by [Appellant]?

Appellant's Brief at 3.

In his first issue, Appellant avers the evidence presented was insufficient to support his convictions of both hindering apprehension and conspiracy. Specifically, with regard to hindering apprehension, he argues the evidence failed to establish he acted with the requisite intent to hinder the apprehension of Holt. Appellant's Brief at 12. Rather, relying on *Commonwealth v. Gettemy*, 591 A.2d 320 (Pa. Super. 1991), Appellant insists that "providing false answers in response to questions initiated by law enforcement officers is not hindering apprehension or prosecution." Appellant's Brief at 13, *quoting Gettemy*, 591 A.2d at 321 (citation omitted). With regard to his conviction of conspiracy, Appellant maintains the Commonwealth failed to prove he conspired with Benson to aid Holt's escape. Appellant's Brief at 19. Appellant

argues the evidence presented showed Benson "acted on her own volition" to aid Holt. *Id.*

Our standard of review is well-settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Irvin*, 134 A.3d 67, 75 (Pa. Super. 2016).

We first consider Appellant's conviction of hindering apprehension. The trial court found Appellant guilty of 18 Pa.C.S. § 5105(a)(5) which reads as follows:

**(a) Offense defined.** - A person commits an offense if, with intent to hinder the apprehension, prosecution, conviction or punishment of another for crime or violation of the terms of probation, parole, intermediate punishment or Accelerated Rehabilitative Disposition, he:

\* \* \*

(5) provides false information to a law enforcement officer.

- 6 -

18 Pa.C.S § 5105(a)(5)

As noted **supra**, Appellant argues the Commonwealth presented no evidence from which the court could draw a reasonable inference from that he intended to hinder the apprehension of Holt. Appellant's Brief at 12. Appellant contends the evidence could only prove he had lied to police following his arrest. **Id.** Appellant states this conduct "does not rise to the level of conduct prohibited under the statute" and that a guilty verdict based on these facts would "expand the scope of the statute[ ]" with which he has been convicted. **Id.** In support of his interpretation of the statute, Appellant relies on **Gettemy** and **Feese**, 79 A.3d 1101 (Pa. Super 2013).

In **Gettemy**, the police interviewed the defendant and her boyfriend while investigating the disappearance of a woman and her motorhome. **Gettemy**, 591 A.2d at 322. Upon police questioning, the defendant and her boyfriend gave the police false information about the location of the motorhome. **Id.** The defendant denied any knowledge of the woman's disappearance or the location of the motorhome. **Id.** Further investigation revealed the defendant and her boyfriend were seen in possession of the motorhome prior to police questioning. **Id.** The defendant was charged with hindering apprehension or prosecution under Section 5105(a)(5). **Id.** The defendant filed a motion to quash alleging the Commonwealth failed to present a *prima facie* case. **Id.** The court granted the motion and the Commonwealth appealed. **Id.**

This Court affirmed the ruling of the trial court. At the time of the offense, the statute read:

**(a) Offense defined.** A person commits an offense if, with intent to hinder the apprehension, prosecution, conviction or punishment of another for crime, he:

(5) **volunteers** false information to a law enforcement officer.

18 Pa.C.S § 5105(a)(5) (emphasis added). Relying on the definition of "volunteers" as well as commentary in the Model Penal Code (MPC), the *Gettemy* Court held that "providing false answers in response to questions initiated by law enforcement officers does not constitute hindering apprehension or prosecution." *Gettemy*, 591 A.2d at 323.

After *Gettemy*, however, the legislature amended the statute and changed "**volunteers** false information to a law enforcement officer" to "**provides** false information to a law enforcement officer." *See* 1996, Dec. 18, P.L. 1074, No. 160, §1, effective in 60 days (emphasis added). Appellant insists the amendment "had no practical change on the interpretation of the statute, and the precedential value of *Gettemy* remains in effect." Appellant's Brief at 14. Further, he notes a panel of this Court in *Feese* cited *Gettemy* with approval despite the fact the offenses in that case occurred after the amendment to Subsection (a)(5).[3] *See Feese*, 79 A.3d at 1125.

---

[3] We note that *Feese* is distinguishable when considering the present facts because in *Feese*, the defendant committed the "affirmative act" of withholding and altering documents — he did not simply provide a false answer upon police questioning. *Feese*, 79 A.3d at 1125.

The trial court found **Gettemy** distinguishable from the facts in the present case. The court opined:

> **Gettemy** focused on the fact that the police had initiated questioning that resulted in the untruthful statements, rather than the defendant volunteering [them]. Since, **Gettemy**, the relevant portion of the statute changed from a defendant taking the initiative to 'volunteer' information to 'providing' information.

Trial Ct. Op. at 5. Thus, we must determine whether the change in the statutory language leads to a different result.

Preliminarily, we note that we reviewed the legislative history, and found no discussion as to why the statute was amended. Therefore, we must engage in statutory interpretation.

It is well established that:

> When interpreting a statute, the court must ascertain and effectuate the intent of the legislature and give full effect to each provision of the statute if at all possible. 1 Pa.C.S.A. § 1921(a); **Commonwealth v. Brown**, 620 A.2d 1213, 1214 (1993); **Commonwealth v. Edwards**, 559 A.2d 63, 66 (1989), *appeal denied,* 565 A.2d 1165 (1989). In construing a statute to determine its meaning, courts must first determine whether the issue may be resolved by reference to the express language of the statute, which is to be read according to the plain meaning of the words. 1 Pa.C.S.A. § 1903(a). **See Commonwealth v. Berryman**, 649 A.2d 961 (1994) (*en banc*).

**Commonwealth v. Lopez**, 663 A.2d 746, 748 (Pa. Super. 1995). We also note:

> In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used:
>
> > (1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.

> (2) That the General Assembly intends the entire statute to be effective and certain.
>
> (3) That the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth.
>
> (4) That when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language.
>
> (5) That the General Assembly intends to favor the public interest as against any private interest.

1 Pa.C.S. § 1922.

Here, since the statute does not provide definitions, we first look to the "common and approved usage" of the terms "provides" and "volunteers." **See** 1 Pa.C.S. §1903 (a). Webster's Dictionary defines "provide" as "to make something available to.[4]" "Volunteer" is defined as "to offer or bestow voluntarily.[5]" The two terms, in application, are similar. However, the trial court, without any explanation, presumed a different outcome resulted when the language was changed from "volunteers" to "provides."

To further examine the meaning of this section, we look to the MPC since Section 5105 "is derived from Section 242.3 of the Model Penal Code." **Gettemy**, 591 A.2d at 509.

---

[4] Merriam-Webster.com, "provide," *available at* https://www.merriam-webster.com/dictionary/provide.

[5] Merriam-Webster dictionary, "Volunteer," *available at* https://www.merriam-webster.com/dictionary/volunteer.

The commentary to the MPC explains the meaning of the statute by way of definitions and examples. It specifies:

> A purpose to aid the offender to avoid apprehension . . . is not proved merely by showing that the defendant gave succor to one who was in fact sought for a crime.

Model Penal Code, § 242.3, Commentary at 229. At the common law, any help or aid to an individual was sufficient to constitute a crime as long as the aiding party was aware the individual they were helping was guilty of a felony. *Id.* at 231. However, the MPC Commentary also emphasized that "certain kinds of assistance should not be made criminal[.]" *Id.* at 232. With regard to the subsection criminalizing the "volunteering" of false information to police, the commentary explained:

> Mere failure to report a crime is not proscribed by this action. **Neither is giving misleading or even false answers to inquiries initiated by police.**

*Id.* at 235 (emphasis added). *See also Gettemy*, 591 A.2d 323; *Feese*, 79 A.3d 1125. Rather:

> [T]his solution [is] premised in part on the fear that a wider reach for this subsection would invite abusive charges by police against persons interviewed in the course of investigating crime. . . . This provision is intended to reach those who **take initiative** in throwing the police off track.

Model Penal Code, § 242.3, Commentary at 235.

Relying upon the reasoning in both the MPC commentary and Pennsylvania case law, we conclude the Commonwealth was required to prove Appellant intended to hinder or "throw police off track[ ]" in their

investigation to apprehend Holt. *See* Model Penal Code, § 242.3, Commentary at 235; *Gettemy*, 591 A.2d at 323. Upon our review, we agree with Appellant that this subsection of the statute was not intended to criminalize the giving of false or misleading answers to questions initiated by police. *See id.* Further, as noted *supra*, our review of the legislative history revealed no basis to conclude the 1996 amendment — which substituted the word "provides" for "volunteers" — was intended to broaden the scope of criminal behavior under the statue.

Had Appellant given information to police that may have delayed or compromised apprehending Holt, that could have risen to the conduct contemplated when writing Subsection (a)(5). *See Commonwealth v. McClelland*, 204 A.3d 436, 446 (Pa. Super 2019) (holding that when defendant "provided an imperfect alibi for her husband on the day of the murder[,]" a jury could reasonably infer her intent was to "hinder [police] efforts to apprehend [ ] her husband.") (citation omitted). Here, upon police initiated questioning, Appellant falsely told police he had not seen Holt. Trial Ct. Opinion at 4. Appellant did not provide an alibi for Holt or give information amounting to the intent to "hinder police efforts[.]" *See McClelland*, 204 A.3d at 446 (citation omitted). We believe the statute would be met if Appellant had lied about something relevant to Holt's location or whereabouts as opposed to simply telling the police he had no contact with him. *See id.* Police arrested Holt "close to four a.m." on November 21, 2017, shortly after speaking with Appellant. N.T., 2/14/19,

at 47; N.T., 3/7/19, at 34-35.[6]  Appellant's false statement did not impair the police's ability to apprehend or track down Holt, nor did it misdirect police from his location or trail.  **See id.**  Additionally, the Commonwealth offered no evidence Appellant had knowledge of Holt's whereabouts.  The text messages, believed to be between Appellant and Holt, offered no information regarding the location of the sender or receiver.  The Commonwealth offered no evidence suggesting Appellant was aware of Holt's location or was hiding this information from police.  They offered only evidenced that Benson knew Holt's location after Holt left the Hinnerman Street residence.  **Id.** at 10.

Subsection (a)(5) would seem to require a causal connection between the conduct and the actual apprehension of the suspect.  We do not see this causal connection.  Thus under these specific facts, Appellant did not "provide" false information to police that would amount to a violation of Section 5105(a)(5).  Accordingly, we hold that, under the reasoning of **Gettemy**, Appellant's single false statement was insufficient to demonstrate he intended to "throw police off track[ ]" or hinder the apprehension of Holt.

---

[6] We glean this fact from the argument of both Appellant's attorney and the Commonwealth's attorney where Appellant's attorney argued police spoke to Appellant "around 11 p.m. on the 20[th and police] go to Ladora Street[, where Holt is apprehended,] at 4 a.m. on the 21[st.]" N.T., 3/7/19, at 34.  In the Commonwealth's argument, it stated Holt "is arrested only a few hours" after Appellant denied seeing him.  **Id.** at 35.

*See* Model Penal Code, § 242.3, Commentary at 235; *Gettemy*, 591 A.2d at 323.

We also note that if we read the statute as the trial court proposes, Appellant could be held criminally responsible for not wanting to be involved in a police investigation. This reading of the statute would expand Subsection (a)(5) to equate uninvolvement with the intent to hinder. We conclude this would result in an "absurd" and "unreasonable" interpretation. *See* 1 Pa.C.S. § 1922(1). Thus, we reverse Appellant's conviction of hindering apprehension, and vacate his judgment of sentence on that charge.

Next, we address Appellant's challenge to the sufficiency of the evidence supporting his conviction for conspiracy. Appellant argues there was not sufficient evidence to support a conviction for conspiracy because the evidence "show[ed] that [Benson] acted on her own volition to aid and assist [Holt.]" Appellant's Brief at 19. He states that at no point did he have the specific intent required under the statute to conspire with Benson. *Id.* at 20. Appellant maintains he did not invite Holt into his home, drive Holt to another location, purchase TracFones, or destroy or conceal evidence. *Id.* Because of his paralysis and inability to "ascend the staircase," Appellant maintains he had nothing to do with any evidence from Holt found on the second floor of his home. *Id.* at 21 (citation omitted). He further contends, there was no evidence that he agreed to work with Benson to hinder apprehension of Holt, and that the Commonwealth's case was built on only "mere suspicion and

- 14 -

conjecture, which is insufficient to establish a conspiracy." *Id.* at 21-22 (citation omitted). Appellant insists the Commonwealth's theory of conspiracy relied only on the fact that Appellant and Benson were living together and dating at the time, which is insufficient to prove a conspiracy. *Id.* at 22.

Conspiracy is defined as follows:

**(a) *Definition of conspiracy.* —** A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903(a)(1)-(2).

This Court has stated:

The essence of criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. By its very nature, the crime of conspiracy is frequently not susceptible of proof except by circumstantial evidence. And although a conspiracy cannot be based upon mere suspicion or conjecture, a conspiracy may be inferentially established by showing the relationship, conduct or circumstances of the parties, and the overt acts on the part of the co-conspirators have uniformly been held competent to prove that a corrupt confederation has in fact been formed.

\* \* \*

Among those circumstances relevant to proving conspiracy are association with alleged conspirators, knowledge of the

commission of the crime, presence at the scene of the crime, and, at times, participation in the object of the conspiracy.

*Commonwelath v. Azim*, 459 A.2d 1244, 1246-47 (Pa. Super. 1983) (citations and punctuation omitted).

In the instant case, we conclude the Commonwealth presented sufficient evidence to establish Appellant conspired with Benson to hinder the apprehension of Holt. Although we concluded **supra** that the evidence was insufficient to sustain Appellant's conviction for hindering apprehension under subsection (a)(5), we note that he was charged with conspiracy for providing clothing, a cell phone and transportation to a "fugitive,"[7] which tracks the language of hindering apprehension under subsection (a)(2). **See** 18 Pa.C.S. §5105(a)(2) ("A person commits an offense if, with intent to hinder the apprehension . . . of another . . . he provides or aids in providing a weapon, transportation, disguise or other means of avoiding apprehension or effecting escape[.]"). Although the trial court found Appellant not guilty of this subsection, we note:

> [A]s conspiracy requires proof only of an agreement and an overt act in furtherance of the conspiracy, a defendant may be found guilty of conspiracy without being convicted of the underlying offense.

*Commonwealth v. Riley*, 811 A.2d 610, 617 (Pa. Super. 2002).

Here, the evidence presented at trial established Appellant and Benson agreed to aid Holt in evading his arrest. The Commonwealth presented text

_____

[7] Commonwealth's Motion to Amend Criminal Information 2/4/19, at 3 (unpaginated).

- 16 -

messages proving the existence of a conspiracy between Appellant and Benson. The Commonwealth also presented circumstantial evidence that the text messages were exchanged between Appellant and Holt. In the messages, there was a request to thank Benson for her aid as well as instructions to dispose of evidence later found in Appellant's home. N.T., 3/7/19, at 22-24. The trial court found the Commonwealth met its burden to prove an "agreement and an overt act in furtherance of the conspiracy" existed between Appellant and Benson. *See Riley*, 811 A.2d at 617. Additionally, we recognize "[t]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *See Irvin*, 134 A.3d at 75. Accordingly, we conclude the evidence was sufficient to support Appellant's conviction of criminal conspiracy.

In his second issue, Appellant argues the trial court abused its discretion when it allowed improperly authenticated text messages into evidence. Appellant's Brief at 23. Appellant contends the Commonwealth offered no direct evidence to prove he authored the text messages and the circumstantial evidence offered "depends on the unreasonable and unestablished premise that since [Benson and Appellant] lived together, [Appellant] must have authored the messages." *Id.* Appellant further states that since one of the messages asked the recipient to discard evidence on the second floor, it could not have been sent to him because he is paralyzed. *Id.* at 25.

This Court has stated:

- 17 -

> Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.

***Commonwealth v. Koch***, 39 A.3d 996, 1002 (Pa. Super. 2011) (citation omitted). Further:

> [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

***Commonwealth v. Dodge***, 957 A.2d 1198, 1200 (Pa. Super. 2008) (citation omitted).

Under Pennsylvania Rule of Evidence 901, "authentication is required prior to admission of evidence." ***Koch***, 39 A.3d at 1002. "The proponent of the evidence must introduce sufficient evidence that the matter is what it purports to be." Pa.R.E. 901(a). This may be accomplished by showing "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Pa.R.E. 901 (b)(4).

With regard to electronic writings, such as text messages, this Court has explained:

[E]lectronic writings typically show their source, so they can be authenticated by contents in the same way that a communication by postal mail can be authenticated. Circumstantial evidence may suffice where the circumstances support a finding that the writing is genuine.

\* \* \*

[W]e [have] rejected the argument that e-mails or text messages are inherently unreliable due to their relative anonymity and the difficulty in connecting them to their author. We reasoned that the same uncertainties existed with written documents: "A signature can be forged; a letter can be typed on another's typewriter; distinct letterhead stationary can be copied or stolen." Concluding that electronic communications, such as e-mail and instant messages, can be authenticated within the framework of Pa.R.E. 901 and our case law, we declined to create new rules governing the admissibility of such evidence. We held that such evidence is to be evaluated on a case-by-case basis as any other document to determine whether there has been an adequate foundational showing of its relevance and authenticity.

***Koch***, 39 A.3d at 1003 (citations omitted).

In the instant case, the Commonwealth presented circumstantial evidence that Appellant and Holt were the sender and recipient of the admitted text messages. Additionally, no testimony was offered to suggest a third party, aside from Appellant and Benson, lived at the Hinnerman Street residence at the time the TracFone was recovered there. The locations of the phones corresponded to both Holt's location at the time of his arrest and Appellant's home. N.T., 3/7/19, at 11. Notably, the phone found in Appellant's residence was found next to Appellant "where he was laying on the first floor." ***Id.*** at 20. The trial court pointed specifically to the text message stating, "[ ] tell [Benson] I said thank you for everything[,]" as being

particularly persuasive concerning authentication. Trial Ct. Op. at 5. At trial, the Commonwealth argued:

> [T]he phone found at Hinnerman Street is [Appellant] communicating with the phone [recovered from the location where Holt was arrested]. Because there are only two people in this home. And there is no reason why this person would be saying thank [Benson] if that person was [Benson-. It would be thank you. So they are telling the other person in the home, which is [Appellant] to pass along this information.

N.T., 3/7/19, at 26. We agree.

Under the specific circumstances of this case — which include Appellant's limited mobility, the recovery of the phone next to where Appellant was lying when he was arrested, and the content and surrounding context of the text messages — we conclude the Commonwealth met the requisite standard for authentication and admission into evidence. Contrary to Appellant's claim, the facts presented here establish much more than Appellant's mere physical proximity to the phone. *See* Appellant's Brief at 26. Because we detect no abuse of discretion on the part of the court's ruling, Appellant is entitled to no relief.

Therefore, we conclude the evidence was insufficient to sustain Appellant's conviction of hindering apprehension. Accordingly, we reverse that conviction, and vacate his judgment of sentence on that charge. Because Appellant's sentence for hindering apprehension was imposed to run concurrently with his sentence for conspiracy, our reversal of that conviction does not disturb the overall sentencing scheme. *See Commonwealth v.*

*Lomax*, 8 A.3d 1264, 1268 (Pa. Super 2010) (stating when this Court vacates a sentence without disturbing the overall sentencing scheme, there is no need for remand).  Thus, in all other respects, we affirm.

Judgment of sentence affirmed in part and vacated in part.  Jurisdiction relinquished.

Judge Colins joins the memorandum.

Judge Bowes files a concurring/dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  06/04/2021